86 P.3d 384

**STATE of Arizona, Appellee,**

v.

**Garrett M. WINDUS, Appellant.**

**No. 1 CA–CR 03–0138.**

Court of Appeals of Arizona, Division 1, Department E.

March 23, 2004.

---

2. The parties have not provided this Court with a copy of the plea agreement.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, and David Wood, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

Maricopa County Public Defender By Garrett W. Simpson, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

IRVINE, Judge.

¶ 1 Garrett M. Windus appeals his convictions for aggravated assault and resisting arrest. He claims the convictions must be dismissed because it was only after the officers' illegal entry into his backyard that the crimes occurred. We hold that the crimes committed after the illegal entry were distinct offenses independent of the officers' illegal conduct because the officers did not exploit their unlawful entry to provoke new and distinct criminal conduct.

**1.** Windus based his motion to dismiss on the evidence presented at the preliminary hearing. For purposes of deciding the motion, the trial

## FACTUAL AND PROCEDURAL HISTORY[1]

¶ 2 Officers Feddeler, Quesada and Cooper went to Windus's home to investigate a neighbor's complaint of criminal activity. When the officers arrived, they saw a bonfire inside Windus's backyard. They opened the closed gate, stepped about two feet into the yard, and heard people near the fire. The officers shined their flashlights toward the bonfire and asked that the individuals come out and speak with them. The State concedes that the officers' entry was illegal.

¶ 3 Windus responded to the officers' calls and immediately protested their presence on his property. Because Windus had his hands behind his back, the officers directed him to make them visible. Feddeler testified that Windus pulled his hands out using a "flaring" motion, at which point he grabbed Windus's hand. Windus pulled away and punched him in the shoulder. Feddeler and the other officers then took Windus to the ground and a protracted struggle ensued. Five officers eventually subdued and handcuffed Windus.

¶ 4 Quesada's testimony differed in certain respects. He said that because Windus kept his hands behind his back after being asked to place them at his side, Quesada directed him to turn around. As Windus turned, the officers advised him that he was under arrest. The officers simultaneously went "hands-on" in an attempt to handcuff Windus without a struggle. A struggle nevertheless occurred and the officers subdued Windus after about four minutes.

¶ 5 The State charged Windus with aggravated assault against Feddeler, Quesada and Cooper, as well as resisting arrest. Windus filed a motion to dismiss, contending that the alleged assault and resistance were fruits of the officers' illegal entry. The trial court denied the motion, relying on *United States v. Waupekenay*, 973 F.2d 1533 (10th Cir. 1992), which held that evidence of an assault initiated against police officers after an illegal entry was admissible because the defendant did not have a subjective expectation of privacy at the time he initiated the assault.

court accepted the facts as stated by Windus. The following facts are therefore as presented at the preliminary hearing.

**330**

¶ 6 Windus waived his right to a jury trial. The parties stipulated that the court could decide the case based on a police report, preliminary hearing transcript, and several photographs. The court found Windus guilty as charged.

## DISCUSSION

¶ 7 Windus argues that the trial court erred by denying his motion to dismiss. He distinguishes *Waupekenay* on the ground that, unlike the defendant in that case, he had a reasonable expectation of privacy during the assault and struggle. The State argues the exclusionary rule does not apply to new crimes committed after an unlawful search or seizure. It further argues that Windus's criminal acts were independent of the officers' illegal conduct.[2]

■ ¶ 8 A trial court's ruling involving a motion to suppress will not be disturbed absent clear error. *State v. Dean*, 206 Ariz. 158, 161, ¶ 9, 76 P.3d 429, 432 (2003). We find no such error here.

¶ 9 In *Waupekenay*, police unlawfully entered the defendant's home in response to a domestic violence complaint. *Waupekenay*, 973 F.2d at 1536. Upon their entry, the defendant pointed a gun at them. *Id.* at 1535. The officers eventually arrested him and seized evidence. *Id.* The defendant was charged with assault with a dangerous weapon. *Id.*

¶ 10 The defendant in *Waupekenay* moved to suppress evidence obtained as a result of the officers' entry. *Id.* The trial court found the entry was illegal and granted the motion. *Id.* The Tenth Circuit agreed that the officers unlawfully entered the home. *Id.* at 1536. In determining whether the evidence was the fruit of the unlawful entry, the court asked two questions. *Id.* at 1536–38. First, did the defendant exhibit a subjective expectation of privacy when he assaulted the officers? *Id.* Second, if he did, was that expectation reasonable? *Id.* The court did not reach the second question because it found

that once the defendant was aware that the officers were inside his home, he could not have had a reasonable expectation of privacy with respect to any actions initiated in their presence. *Id.*

¶ 11 This Court addressed a similar situation in *State v. Tassler*, 159 Ariz. 183, 765 P.2d 1007 (App.1988). Officers there responded to a domestic violence report. *Id.* at 184, 765 P.2d at 1008. When they arrived at the defendant's trailer, the defendant refused to leave. *Id.* The officers entered the trailer because the defendant's wife appeared to have been assaulted. *Id.* They intended to arrest the defendant unless he had an explanation for his conduct. *Id.* When the defendant moved his hand toward a knife on his belt, the officers moved to stop him and a struggle ensued. *Id.*

¶ 12 The defendant in *Tassler* was convicted of resisting arrest. *Id.* We found the officers' warrantless entry lawful, but went on to opine that even if the entry to arrest for domestic violence was illegal, the defendant's resistance was an independent crime. *Id.* at 185, 765 P.2d at 1009. Therefore, the arrest for resisting and search incident thereto were lawful. *Id.* (citing *United States v. Bailey*, 691 F.2d 1009 (11th Cir. 1982)).

¶ 13 In *Bailey*, the defendant fled from a law enforcement officer, who he also struck in an attempt to avoid recapture. 691 F.2d at 1012. The court assumed that the original stop was invalid, but held that even if there is a strong causal connection between illegal police conduct and a defendant's response, the officers may lawfully arrest the defendant if his response is itself a new crime. *Bailey*, 691 F.2d at 1016–18. The court held that extending the exclusionary rule to new crimes would effectively immunize defendants from punishment for further crimes so long as they are sufficiently connected to the chain of causation linked to the illegal police conduct. *Id.*

2. Windus filed a motion to dismiss in the trial court, while on appeal he requests suppression of evidence. During the hearing on his motion, Windus asked the trial court to "suppress and dismiss." Both parties and the trial court analyzed his claim by applying law pertinent to suppression. Under the circumstances here, the result of suppression of the evidence would be dismissal. For these reasons, we treat Windus's motion as a motion to suppress.

¶ 14 *Bailey* relied in part on *United States v. Garcia*, 516 F.2d 318 (9th Cir.1975). In *Garcia*, the defendant failed to stop at a border checkpoint, then sped off when border agents pursued. *Id.* at 319. The agents eventually stopped him, searched his trunk, and found marijuana. *Id.* The Ninth Circuit assumed the stop at the fixed checkpoint was illegal, but held the search was permissible because officers did not exploit the illegality. *Id.* Instead, the defendant voluntarily fled, giving officers probable cause for the search. *Id.* We find particularly persuasive the following reasoning:

> If there were evidence in the record that the checkpoint ... was designed to lure suspected criminals into flight from law enforcement officers, we might reach a different conclusion. Where a suspect's act is the intended result of illegal police conduct, or ensuing police action, it is likely to prove tainted.... But where the illegal conduct of the police is only a necessary condition leading up to the suspect's act, no taint attaches to his conduct; a "but-for" connection alone is insufficient.

*Id.* (citations omitted).

¶ 15 Although different courts have used different analyses to reach the same conclusion, the basic question is the same: "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting Maguire, *Evidence of Guilt* 221 (1959)).

■ ¶ 16 Consistent with the principles set forth above, we find that the officers did not exploit their unlawful entry to provoke Windus's new, distinct criminal conduct. Instead, the evidence establishes that the officers entered Windus's yard to obtain his response to his neighbor's complaints. Suppressing evidence of Windus's conduct, therefore, would not serve the exclusionary rule's primary purpose of deterring illegal police conduct. *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).[3]

## CONCLUSION

¶ 17 The trial court properly denied Windus's motion to dismiss. We therefore affirm his convictions.

CONCURRING: SUSAN A. EHRLICH and BOYD T. JOHNSON,* Judges.

---

3. In addition, extending the exclusionary rule to situations like Windus's could insulate from prosecution motorists who flee at high speeds from unlawful traffic stops or suspects who use weapons to forcibly resist unlawful arrests. *See Bailey*, 691 F.2d at 1017 (extending fruits doctrine to immunize defendant from arrest for new crimes that are sufficiently connected to chain of misconduct caused by police wrongdoing "is too far reaching and too high a price for society to pay in order to deter police misconduct"). Moreover, the Arizona criminal code reflects a policy of deterring forcible resistance to all but the most extreme arrest. *See* A.R.S. § 13–404(B)(2) (justification defense unavailable when force is used or threatened to resist unlawful arrest, unless in response to excessive force used by officer); *see also State v. Hatton*, 116 Ariz. 142, 147, 568 P.2d 1040, 1045 (1977) (noting trend away from rule permitting right to resist unlawful arrest and toward settlements of such disputes in court).

* The Honorable Boyd T. Johnson, Pinal County Superior Court Judge, was authorized to participate in the disposition of this appeal pursuant to Ariz. Const. art. VI, § 3 and A.R.S. §§ 12–145 through 147.