135 P.3d 57

**STATE of Arizona, Appellee,**

v.

**Clifton Charles BOOKER, Appellant.**

No. 1 CA–CR 04–0530.

Court of Appeals of Arizona,
Division 1, Department C.

May 18, 2006.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Department of Law and Lacey Alexandra Stover Gard, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Susan L. Corey, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Defendant Clifton Charles Booker ("Booker") appeals his conviction and sentence for aggravated assault. Booker argues the trial court erred by failing to suppress evidence of a bong gained from an illegal search of his home that occurred the day before the alleged assault. We hold the exclusionary rule does not apply to the facts of this case.[1]

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 This case arises out of an altercation between Booker and the victim. Booker met the victim in Illinois when Booker was working in the victim's wife's beauty salon. After the victim and his wife divorced, Booker moved to Arizona. The victim's ex-wife followed Booker to Arizona, bringing the victim's son with her. The victim later came to Arizona. He initiated contact with the Phoenix Police Department, and summoned the police to Booker's apartment to see if his son was in Booker's apartment. When the police arrived at Booker's apartment and knocked on the door, they noticed Booker moving around in the apartment with clothing on. When Booker answered the door after a delay wearing only a towel, the police conducted a search of the apartment and seized a bong.[2] The victim's son was not in the apartment. According to the victim, Booker was irate as a result of the police search of his apartment.

¶ 3 The victim later returned to Booker's apartment complex. According to the victim, while in the parking lot Booker attempted to hit the victim, and then the victim hit Booker. The victim stated that Booker then went into his apartment and came back running at the victim with something behind Booker's back. The victim stated he tackled Booker because he was afraid Booker had a gun, at which time Booker stabbed him in the back. According to Booker, when he approached the victim, the victim hit him. The victim then reached behind his back. Booker stated that, fearing the victim had a weapon, he tackled the victim and took him to the ground, causing the victim to fall upon the knife the victim was apparently holding behind his back.

¶ 4 The State charged Booker with one count of aggravated assault, alleging that he, "using a knife, a deadly weapon or dangerous instrument, intentionally, knowingly or recklessly caused physical injury" to the victim. The State further alleged that this was a dangerous felony either because it involved the discharge, use, or threatening exhibition of a knife, or because it involved the infliction of serious physical injury on the victim.

¶ 5 Prior to trial, Booker moved to suppress evidence, including his bong, seized as a result of the warrantless search of his apartment conducted prior to the assault. After the hearing on the motion to suppress, the court found that the police conducted an impermissible warrantless search of Booker's home. However, the court found that suppression of the evidence resulting from the search would not serve the exclusionary rule's deterrent purpose because he was charged with a crime independent of the fruits of the search.

¶ 6 Booker later moved to preclude evidence indicating Booker's marijuana use and his efforts to conceal his bong when the police arrived at his apartment. After a hearing on the motion, the court precluded any evidence of Booker's drug use or his attempts to conceal the bong.

¶ 7 At trial, Booker testified on his own behalf. During direct examination, Booker testified that when the police came to his apartment for the first time, he removed his

---

1. In a separate memorandum decision we vacate and remand Booker's conviction and sentence based upon the denial of his requested self-defense instruction. *See* Ariz. R. Sup.Ct. 111(h).

2. A bong is "a water pipe for marijuana" derived from the Thai, "baung," meaning a "cylindrical wooden tube." Online Etymology Dictionary, *http://www.etymonline.com/index.php?term=bong* (last visited Nov. 15, 2005).

bong from his table and placed it in his bedroom closet so that he would not be arrested. The State in turn cross-examined Booker about his actions to conceal the bong.

¶ 8 A jury found Booker guilty as charged. The court sentenced Booker to a presumptive term of seven and a half years imprisonment. Booker timely appealed. This Court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 13–4033 (2001).

## DISCUSSION

¶ 9 Booker argues the superior court erred in refusing to suppress evidence related to his bong. The State offered testimony about the seizure of the bong both as evidence intrinsic to the victim's version of the events and to establish Booker's retaliatory motive to harm the victim. The superior court determined evidence related to Booker's bong was the fruit of an unlawful search and seizure. However, the court declined to suppress that evidence because the aggravated assault was a separate and distinct offense from his possession of the bong, and therefore exclusion of the bong would not serve the exclusionary rule's primary purpose of deterrence.

¶ 10 We review the superior court's ruling on the motion to suppress for abuse of discretion if it involves a discretionary issue, but review constitutional issues and purely legal issues de novo. *State v. Moody,* 208 Ariz. 424, 445, ¶ 62, 94 P.3d 1119, 1140 (2004). Neither Booker nor the State contests the court's finding that the police officers who seized Booker's bong had unlawfully invaded his privacy interests in violation of the Fourth Amendment. Accordingly, the sole issue with regards to the suppression ruling

is whether *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and its progeny mandate exclusion of evidence related to the bong.

¶ 11 We hold the exclusionary rule should not be applied to the evidence related to the bong. Expansion of the exclusionary rule to this set of facts would not serve the deterrent purpose of the rule.[3] In so holding, we adopt the rationale of various other courts that, when there is no cognitive nexus between the police misconduct and the crime for which the defendant is ultimately tried, the exclusionary rule's primary deterrent purpose is not served.

¶ 12 A Fourth Amendment violation does not mandate reflexive exclusion of evidence. *Arizona v. Evans,* 514 U.S. 1, 14, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). *See also Stone v. Powell,* 428 U.S. 465, 491, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (disapproving of "indiscriminate" application); *Terry v. Ohio,* 392 U.S. 1, 15, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (disapproving of "rigid and unthinking application of the exclusionary rule"). Suppression under the exclusionary rule "is not a personal constitutional right. It is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any reparation comes too late." *Stone,* 428 U.S. at 486, 96 S.Ct. 3037 (internal quotation omitted).

¶ 13 Rather, the exclusionary rule is a judicially created means of effectuating the Fourth Amendment. *Stone,* 428 U.S. at 482, 96 S.Ct. 3037. The primary purpose of the rule is to deter police conduct in violation of Fourth Amendment rights by removing the incentive for such conduct.[4] *United*

---

3. It is upon this fundamental point that we differ with the dissent. We do not *create* an exception to the exclusionary rule where none exists, as the dissent posits. Rather, we join other courts that have refused to expand the exclusionary rule's reach to a context in which its purposes are not efficaciously served. Nor can we adopt the dissent's per se rule that, anytime police might illegally seize contraband, the seized property must always be suppressed absent a recognized exception to the exclusionary rule.

4. The Supreme Court stated the exclusionary rule also served the purpose of securing judicial

integrity in *Terry,* 392 U.S. at 12–13, 88 S.Ct. 1868. The Court has limited this idea in subsequent decisions, holding the imperative of judicial integrity in and of itself does not justify suppression of evidence. *United States v. Leon,* 468 U.S. 897, 921 n. 22, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Janis,* 428 U.S. 433, 458 n. 35, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (focus for judicial integrity purposes must be on whether exclusion of the evidence would deter police misconduct); *Stone,* 428 U.S. at 485, 96 S.Ct. 3037; *Michigan v. Tucker,* 417 U.S. 433, 450 n. 25, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

*States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). This does not mean, however, that any proposed application of the exclusionary rule that might deter police misconduct must be adopted. *Id.* at 350, 94 S.Ct. 613; *Leon,* 468 U.S. at 910, 104 S.Ct. 3405; *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Nor does the exclusionary rule proscribe the use of illegally seized evidence in all proceedings or against all persons. *Calandra,* 414 U.S. at 348, 94 S.Ct. 613. Rather, the rule has been applied only to circumstances in which its deterrent purpose is "most efficaciously served." *Id.; Evans,* 514 U.S. at 11, 115 S.Ct. 1185.[5]

■ ¶ 14 The proper application of the exclusionary rule is determined by weighing the potential costs and benefits of excluding the evidence in a particular case. *Calandra,* 414 U.S. at 349, 94 S.Ct. 613; *Leon,* 468 U.S. at 906, 104 S.Ct. 3405. This pragmatic analysis has been employed to limit the exclusionary rule's expansion to use in grand jury proceedings, for impeachment of defendants' testimony, against persons without standing to assert a Fourth Amendment violation, and in federal habeas corpus proceedings. *Stone,* 428 U.S. at 487–490, 96 S.Ct. 3037.

¶ 15 We begin by examining the benefits of applying the exclusionary rule to the prosecutor's use of the unlawfully obtained evidence in this case. There is no question evidence related to the unlawful seizure of Booker's bong may not be used in proceedings involving possession of that bong or any drugs that may have been used in the bong. *See Mapp,* 367 U.S. at 657, 81 S.Ct. 1684. Suppression of evidence in those proceedings serves the exclusionary rule's deterrent purpose; the law enforcement process directly related to seizing the bong is frustrated. *See Janis,* 428 U.S. at 448, 96 S.Ct. 3021. That

primary deterrent effect is therefore accomplished.[6]

¶ 16 This case does not involve charges related to possession of drugs or drug paraphernalia. Booker urges the exclusionary rule nonetheless applies to the State's introduction of the seizure of the bong to support aggravated assault charges. Such ancillary application of the exclusionary rule is an extension of the rule's protections beyond its primary use as outlined above. Whether this extension is proper depends upon whether it creates a significant deterrent effect in addition to the primary deterrent effect of precluding its use in a trial directly related to Booker's possession or use of the bong. *See Janis,* 428 U.S. at 453–54, 96 S.Ct. 3021; *Stone,* 428 U.S. at 493, 96 S.Ct. 3037; *Alderman,* 394 U.S. at 174–75, 89 S.Ct. 961.

■ ¶ 17 Various courts have examined the deterrent benefits of extending the exclusionary rule to situations in which the criminal conduct charged is unrelated to the purposes of the unlawful search ("unrelated use"). *See, e.g., United States v. Hill,* 60 F.3d 672, 680–81 (10th Cir.1995) (testimony on prior arrests involving drug possession to establish essential element in later drug possession charges); *United States v. Lopez–Martinez,* 725 F.2d 471, 476 (9th Cir.1984) (evidence of prior distribution to establish knowledge of substance for distribution charges); *United States v. Turk,* 526 F.2d 654, 667 (5th Cir.1976) (evidence of drug possession and distribution to contradict in-court statements for perjury charges); *United States v. Knight,* 185 F.Supp.2d 65, 66–67 (D.D.C.2002) (previous arrest involving sale of cocaine to show knowledge of substance and intent to sell); *People v. Beuer,* 77 Cal. App.4th 1433, 92 Cal.Rptr.2d 572, 576 (2000) (previous discovery of drugs in illegally parked vehicle to show knowledge of drugs

---

5. The State relies in part upon *State v. Windus,* 207 Ariz. 328, 86 P.3d 384 (App.2004), for this proposition. That case discussed whether a new crime committed by the search victim purged the primary taint of the unlawful search or seizure. 207 Ariz. at 331, ¶ 15, 86 P.3d at 387 (citing *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). As this case addresses whether the exclusionary rule is applicable in this context rather than whether the

evidence is attenuated from the misconduct, *Windus* is not on point.

6. It is irrelevant to this analysis that Booker was not in fact charged with possession or use of drug paraphernalia or unlawful substances. It is the certainty that the evidence would be suppressed if proffered for direct use that deters unlawful conduct, not the later fact of suppression.

and intent to sell); *Taylor v. State*, 92 Nev. 158, 547 P.2d 674, 676–77 (1976) (photograph of mattress taken after unrelated arrest to show defendant's connection to murder). These courts have agreed that unrelated use of illegally obtained evidence serves an additional deterrent purpose only when there is a cognitive nexus between the officers' unlawful conduct and the subsequent police investigation or trial. *Hill*, 60 F.3d at 677

("[T]he exclusionary rule does apply where ... the alleged unlawfully obtained evidence is being used to prove an essential element of a charged offense—at least where there is some nexus between the initial search and seizure and the subsequent charged offense."); *Lopez–Martinez*, 725 F.2d at 476 (no suggestion of bad faith or collusion by the law enforcement officers involved in the two arrests, and no evidence indicating the officers involved in the prior arrest foresaw the statements elicited would be useful in subsequent case); *Turk*, 526 F.2d at 667 ("For suppression of the tape at the perjury trial to have any significant deterrent effect, we would have to assume that the police could be so confident that an immunized search victim would prevaricate before a grand jury that they would be willing to seize evidence of a crime illegally, and thus forego the possibility of direct prosecution."); *Knight*, 185 F.Supp.2d at 67–69 (adopting *Lopez–Martinez* and *Hill*, and finding "no evidence of collusion or bad faith between the groups of officers."); *Beuer*, 92 Cal.Rptr.2d at 576 (no showing of connection or nexus when officers from different law enforcement agencies stopped or investigated defendant's car for different reasons unrelated to charges at issue, and no showing that either agency was aware of one another's interactions with defendant); *Taylor*, 547 P.2d at 676 (no perceptible deterrent effect when prior search directed at completely unrelated crime, and there is no suggestion that inadvertent violation of defendant's Fourth Amendment rights was calculated to produce evidence that would be used in the future). The Ninth

Circuit, the Tenth Circuit, and the California Court of Appeal have stated this nexus is established if the charged conduct was in the offending officers' zone of primary interest at the time of the unlawful search or seizure. *Lopez–Martinez*, 725 F.2d at 476 (citing *Janis*, 428 U.S. at 458, 96 S.Ct. 3021); *Hill*, 60 F.3d at 679–80 (citing *Janis*, 428 U.S. at 458, 96 S.Ct. 3021); *Beuer*, 92 Cal.Rptr.2d at 575–76.

¶ 18 We find this reasoning persuasive. There is no evidence that the aggravated assault was in the offending officers' zone of primary interest when they seized the bong. Accordingly, suppression of evidence related to the seizure of Booker's bong in this case would not further effectuate the deterrent purpose of the exclusionary rule.

¶ 19 Booker asserts the State's purpose in introducing testimony on the seizure of the bong—as intrinsic to the victim's version of the events and to show retaliatory motive—constitutes a nexus between the unlawful seizure and the aggravated assault prosecution. However, as noted above, deterrent effect is not established by *any* logical connection between the unlawful search or seizure and the subsequent crime charged. Rather, there must be an appreciable cognitive nexus from the standpoint of the offending officers. This is because it is the offending officers' conduct the exclusionary rule seeks to deter. *See Evans*, 514 U.S. at 14, 115 S.Ct. 1185; *Leon*, 468 U.S. at 916, 104 S.Ct. 3405; *Janis*, 428 U.S. at 448, 96 S.Ct. 3021. By locating the nexus in the prosecutor's use of the evidence Booker misplaces the focus of our inquiry. By this logic, application of the exclusionary rule would merely deter prosecutors' use of unlawfully obtained evidence.[7]

¶ 20 Furthermore, this is not a situation like *Hill*, in which conflating the prosecutor's intended use of the unlawfully obtained evidence with law enforcement officers' intent in seizing the evidence was appropriate. In *Hill*, the court carefully pointed out the offending officers conducted a *drug* investiga-

---

**7.** The dissent equates police misconduct in seizing contraband or evidence with prosecutorial decisions after the seizure to use the seized evidence to help prove an unrelated crime. There is no reason to apply the rule when, after an unlawful search and/or seizure, a prosecutor or other law enforcement personnel determine in an unrelated prosecution or investigation that the evidence may bear some use unrelated to the target of the unlawful search.

tion of the defendant and testified about that *drug* involvement to obtain a *drug* conviction after a later investigation. 60 F.3d at 680. It did so after noting:

> [I]t is well known that drug investigations, in particular, can go on for a long time and involve many different transactions and even many police encounters before a subsequent drug charge is brought, and the prosecutors may find it useful to present a complete drug history to the jury relying on one or another of the rationales allowed in [Federal Rules of Evidence Rule] 404(b).

*Id.* at 679. Thus, awareness of a prosecutor's later use of the unlawfully obtained evidence could be imputed to the officers because all parties were involved in an ongoing drug investigation.[8]

¶ 21 We do not find such an inherent connection between the charges, the officers, and the seized evidence in this case. The record does not reflect, nor has Booker asserted, any overarching connection between drug offenses and aggravated assault, such that we could assume the offending officers were aware that their seizure of the bong would ultimately be used in a trial for an assault that had yet to occur. Nor are we aware of any phenomenon of prosecutors employing a defendant's criminal history in order to establish the elements of aggravated assault. *Hill* therefore does not support the application of the exclusionary rule in this case.[9]

¶ 22 The record in fact indicates the use of the bong to support an aggravated assault charge was not within the offending officers' zone of primary interest when they seized the bong. The officers went to the apart- ment on a child welfare check—a purpose not facially related to either a bong or an aggravated assault. The officers happened upon the presence of the bong in the course of searching for the victim's child. The officer who testified at the suppression hearing stated repeatedly that, when he and the other officer entered Booker's apartment and seized the bong, he was concerned Booker was hiding and possibly destroying the bong or any drugs associated with the bong. He did not testify to any other motivation in seizing the bong. Although one of the officers who seized the bong was present the following day when Booker was arrested for the later aggravated assault, he was responding to what he described as "emergency traffic" regarding "unknown trouble." He arrived after the investigation had commenced, was confined to the outer perimeter of the investigation scene, and had no contact with either Booker or the victim. The record does not reflect this officer made any connection between the events of the two days. Accordingly, there is no evidence of bad faith or collusion between the officers involved in the two investigations. Nor does the record support a finding that the subsequent aggravated assault was within the offending officers' zone of primary interests when they seized the bong. Therefore, based upon this record there is no nexus between the unlawful seizure and its use in this case such that extension of the exclusionary rule to that use would have a significant deterrent effect upon the officers' unlawful conduct.[10]

¶ 23 We weigh the minimal deterrent effects of extending the exclusionary rule against the potential costs of excluding evidence upon the truth seeking function of the criminal trial process. *See Stone,* 428 U.S. at

---

8. For this reason, the dissent's hypothetical situation about forged and stolen checks does not demonstrate unlawfully obtained evidence is inadmissible regardless of its use in prosecutions. Assuming the police officers suspected the checks were forged at the time they were seized, given the close relationship between forgery, theft, and fraud in the context of forged checks, it would be easier to establish the cognitive nexus between the seizure and the subsequent use in prosecution under the reasoning of *Hill.*

9. The Tenth Circuit stressed that the evidence was proffered to establish an element of the crime. 60 F.3d at 677, 679, 680. Here, the evidence was merely presented to complete the witnesses' version of the events and to establish Booker's motive to commit the later crime. Neither is an element of aggravated assault.

10. The dissent notes the temporal and spatial closeness between the seizure of the bong and the subsequent altercation between Booker and the victim. The proximity of the two events is not relevant if there is nothing in the record to indicate the police appreciated it at the time of the seizure.

491, 96 S.Ct. 3037 ("[A]lthough the [exclusionary] rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice."); *Alderman*, 394 U.S. at 174–75, 89 S.Ct. 961 ("[W]e are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth."); *Terry*, 392 U.S. at 15, 88 S.Ct. 1868 ("Yet a rigid and unthinking application of the exclusionary rule, in futile protest against practices which it can never be used effectively to control, may exact a high toll in human injury and frustration of efforts to prevent crime."). The deterrent benefits of extending the exclusionary rule to a case such as this, in which the State indirectly uses unlawfully obtained evidence in a manner not within the offending officers' zone of primary interest, do not outweigh the costs of suppressing the evidence. We therefore decline to extend the exclusionary rule to this context.[11] The superior court *did not err* by refusing to suppress evidence related to the seizure of the bong.

## CONCLUSION

¶ 24 The record does not reflect that the use of the bong in the aggravated assault proceedings against Booker was in the zone of primary interest of the officers who conducted the illegal search and seizure. Thus, application of the exclusionary rule to the facts of this case would not serve the exclusionary rule's deterrent purpose. Accordingly, we hold the superior court did not err when it denied Booker's motion to suppress the bong.

CONCURRING: JAMES B. SULT, Judge.

LANKFORD, Judge, Concurring in Part and Dissenting in Part.

¶ 25 I agree with my colleagues on all issues except one. I am reluctant to part with such good company, but I believe that no exception to the exclusionary rule applies to these facts.

¶ 26 My disagreements with the majority are as follows:

1. The holding lacks any directly supporting authority.

2. The majority mischaracterizes the routine application of the exclusionary rule as an "expansion" of that rule.

3. The holding creates an exception to the rule never before recognized by the Supreme Court.

4. The holding rests on phrases such as "zone of primary interest" and "cognitive nexus" that lack analytical content.

5. The majority engages in an unauthorized case-by-case determination of whether the exclusionary rule applies, abandoning precedents and the "bright line" exceptions to the rule.

6. The holding undercuts the purpose of the exclusionary rule.

¶ 27 My first difficulty with the majority opinion is that it lacks any true support in prior decisions. No United States Supreme Court opinion recognizes the exception adopted by the majority.[12] And, as far as I

---

**11.** The dissent hypothesizes this decision will invite police officers to engage in unlawful searches and seizures with the understanding they can "get away with it." This decision does not abrogate the exclusionary rule, undermine its deterrent effect, or invite illegality. Use of evidence obtained in an unlawful search or seizure *for the purposes which the offending officers unlawfully obtained it* is still precluded under the exclusionary rule. In addition, this decision does not affect the availability of relief under 42 U.S.C. § 1983 and other civil causes of action against the police. Thus, this decision hardly encourages police misconduct.

**12.** The Court has adopted a few exceptions. For example, it held that because the exclusionary rule should not shield a defendant from committing perjury, illegally seized evidence can be admitted for impeachment. *See Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The Court also held that the exclusionary rule does not apply to an unrelated federal civil proceeding when the evidence was seized in a state criminal investigation. *Janis*, 428 U.S.

have been able to determine, other courts have not exempted the government from the exclusionary rule on facts like those at hand. The majority cites no analogous cases.[13] The holding fits within no recognized exception to the rule. Accordingly, the court's holding lacks supporting authority.

¶ 28 My second difficulty is that the majority mischaracterizes the application of the exclusionary rule to this case as an "expansion" of the rule. This is a fundamental misconception. The exclusionary rule is the general rule in criminal prosecutions.[14] As the Supreme Court said in *Mapp v. Ohio:* "We hold that all evidence obtained by searches and seizures in violation of the Con-

stitution is, by that same authority, inadmissible in a state court." 367 U.S. at 655, 81 S.Ct. 1684. The instances in which the rule is not applied are the exceptions.[15] It does not "expand" a general rule to apply it in a case within its scope.[16] The majority creates an unprecedented exception to a rule of general application; it does not avoid an expansion of the general rule.

¶ 29 My third objection to the majority opinion is that its exception to the exclusionary rule is an invented one, unrecognized by other courts or by scholars. The exceptions to the exclusionary rule are well-defined and they are few in number.[17] Not one of these

---

at 459–60, 96 S.Ct. 3021. But I have found no case in which the Court adopted any exception that resembles the one advocated by the majority in this case.

13. For example, the majority relies on *United States v. Turk* and *United States v. Lopez–Martinez*, but these were cases involving the perjury exception already recognized by the United States Supreme Court. *See* 526 F.2d at 667, 725 F.2d at 476.

The majority cites but misses the thrust of *United States v. Hill.* The court rejected the trial court's theory that illegally seized evidence could be admitted, as it was against defendant Booker, as evidence of motive or intent. Instead, it said: "We hold, to the contrary, that the exclusionary rule does apply where, as here, the alleged unlawfully obtained evidence is being used to prove an essential element of a charged offense—at least where there is some nexus between the initial search and seizure and the subsequent charged offense." 60 F.3d at 677 (emphasis added). In fact, *Hill* criticized the position of the prosecution, similar to the majority's opinion in this case, that evidence is to be excluded only if used in the prosecution for the conduct that was the subject of the unlawful search. "This [position]," the court said, "ignores the fact that the [Supreme] Court has never swayed from the basic proposition that convictions may not be obtained with evidence from illegal searches and seizures. '[T]he need for deterrence and hence the rationale for excluding the evidence are strongest,' the Court has consistently asserted, 'where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search.'" 60 F.3d at 678 (quoting *Calandra*, 414 U.S. at 348, 94 S.Ct. 613).

Nor is the majority aided much by *Taylor v. State.* The Nevada Supreme Court held that the fruits of a search following an arrest for one offense could be used as evidence in the prosecution of an unrelated crime committed two months later. But *Taylor* rests confessedly on its

own "rather unique circumstances." 547 P.2d at 676. Moreover, unlike *Taylor*, there is a close connection between the original search and seizure and the offense with which defendant Booker is charged: According to the prosecution, the search and seizure were the motivation for the later assault offense and the evidence relating to the earlier events proves the intent element of the assault charge. The search and the offense were also mere hours, not months, apart, and both events occurred at the same location.

14. "The paradigmatic case in which the exclusionary rule is applied is when the prosecutor seeks to use evidence illegally obtained by law enforcement officials in his case-in-chief in a criminal trial." *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1052, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (White, J., dissenting). The present case falls squarely within the paradigm.

15. *See James v. Illinois*, 493 U.S. 307, 311, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990) ("This Court has carved out exceptions to the exclusionary rule...."); Wayne R. LaFave et al., *Criminal Procedure* § 9.6(a), at 395 (2d ed. 1999) ("There exists, however, a few exceptions to [the exclusionary rule]....").

16. *See James*, 493 U.S. at 313–18, 110 S.Ct. 648 (repeatedly characterizing Illinois Supreme Court's ruling as an unwarranted "expansion" of the impeachment exception to the exclusionary rule). An extension of the exclusionary rule would entail lengthening its reach into territory in which it had not been applied before. The Supreme Court has referred to an "extension" of the exclusionary rule in the context of extending this rule of criminal procedure to civil cases. *Janis*, 428 U.S. at 458, 96 S.Ct. 3021. Of course, this appeal involves application of the rule in a criminal case, which is not an extension or expansion.

17. *See* Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 11.6, at 397

exceptions applies to this case. As the court said in *Hill*, a case cited by the majority, "[T]he list of exclusionary rule 'exceptions' [cited by the prosecution] ... all involve contexts in which the evidence is *not* being affirmatively used to prove an element of an offense and thereby to obtain a conviction." 60 F.3d at 678. The evidence against defendant Booker is being used precisely in that way and is subject to the rule.

¶ 30 My fourth concern is that the phrases relied upon by the majority are too vague to be useful. Such terms as "cognitive nexus" and "officer's zone of primary interest" have little or no analytical content. These are vague characterizations, not rules to be applied in cases.

¶ 31 The phrase "zone of primary interest" does have a pedigree. It originated in *United States v. Janis*. *See* 428 U.S. at 458, 96 S.Ct. 3021. However, "zone of primary interest" has never been used as a guiding principle in any Supreme Court opinion. Nor has it ever been referred to as support in any Supreme Court case involving application of the exclusionary rule in a criminal prosecution. *Cf. Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 367–68, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (declining to apply exclusionary rule in parole revocation proceeding); *Lopez–Mendoza*, 468 U.S. at 1050, 104 S.Ct. 3479 (exclusionary rule not applied

in civil deportation hearing). *Janis* itself was a federal civil tax assessment proceeding. The civil/criminal distinction was pivotal: "[T]he Court has never applied [the exclusionary rule] to exclude evidence from a civil proceeding, federal or state." *Janis*, 428 U.S. at 447, 96 S.Ct. 3021. As the context in which the court used the phrase in *Janis* reveals, "zone of primary interest" merely encapsulated the Court's immediately preceding discussion of the utility of applying the exclusionary rule.[18] The Court did not employ the phrase as a rule to be applied in dissimilar future cases. The Court did not further explain the phrase. Accordingly, I find nothing in this phrase that leads us to the result reached by the majority.[19]

¶ 32 "Cognitive nexus" has no claim to a similarly lofty origin. I find it nowhere in the Supreme Court's opinions. Neither of the Supreme Court cases cited by the majority as explaining the reason for the cognitive nexus requirement mentions the phrase, let alone applies the concept. *See supra* ¶ 19.

¶ 33 Even if a connection were required, there is a close connection between the unlawful search and seizure and the current criminal case. There is a temporal connection: The search, seizure and subsequent alleged criminal conduct occurred within a short time.[20] There is a spatial connection:

(4th ed.2004). The exceptions occur in "special circumstances." *Id. See also* Heather A. Jackson, *Arizona v. Evans: Expanding Exclusionary Rule Exceptions and Contracting Fourth Amendment Protection*, 86 J.Crim. L. & Criminology 1201, 1204 (1996) (listing exceptions).

18. The Court wrote:
   [T]he deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign.... This attenuation ... creates a situation in which the imposition of the exclusionary rule is unlikely to provide significant, much less substantial, additional deterrence. It falls outside the offending officer's zone of primary interest.
   428 U.S. at 458, 96 S.Ct. 3021.

19. The majority's discussion of "zone of interest" also suggests that illegal evidence is admissible if no bad faith, collusion or improper motivation by police is involved. *Supra* ¶ 22. I am unaware of any Supreme Court or Arizona decisions that

make the subjective motivation the touchstone of admissibility. On the contrary, the Court has repeatedly held that an officer's subjective motivation does not render an objectively justified search unlawful. *See, e.g., Whren v. United States*, 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). Not even the "good faith" exception to the exclusionary rule turns on the subjective good faith of the officers; it is an objective standard. *Leon*, 468 U.S. at 919 n. 20, 104 S.Ct. 3405.

20. The majority argues that a temporal connection is "not relevant." *Supra* at n. 10. Of course, such assertions make it less clear what is required under the majority's proposed "cognitive nexus" test. Just as importantly, its assertion is belied by the very cases on which the majority relies. *See Hill*, 60 F.3d at 680 (listing time period of "just a few months" as one of factors); *Lopez–Martinez*, 725 F.2d at 476 (contrasting 1974 date of obtaining evidence and

The events took place at Defendant's residence. There is a connection among the people involved: One of the same officers who conducted the search responded to the confrontation and, of course, both the Defendant and the victim were involved in both events. And there is a substantive connection in the evidence itself: The seized evidence was used to show motive or intent in the assault trial. Even if an "appreciable cognitive nexus" is required, it is present.[21]

¶ 34 My fifth difficulty is that the majority engages in a case-specific weighing of the costs and benefits of applying the exclusionary rule. I am unaware of any mandate from the Supreme Court for trial judges (or state appellate judges, for that matter) to engage in a case-by-case assessment of the wisdom of applying the rule. I find no authority for judges to decline to apply the rule in any case in which they think exclusion of evidence would be unwise or undesirable. In truth, we have no more authority to admit illegally seized physical evidence than we have the right to admit into evidence unlawfully coerced confessions. *See Mapp*, 367 U.S. at 656–57, 81 S.Ct. 1684. The exclusion-

ary rule is no "rule" at all if judges may refuse to apply it whenever they wish.

¶ 35 My final area of disagreement lies in the majority's assertions that the deterrent effect of applying the rule would be minimal, and the sacrifice to truth-seeking too great. These are no more than bare conclusions.

¶ 36 In reality, there is no less deterrence in this case than in any other. The exclusionary rule would deprive the prosecution of any evidentiary benefit of illegally obtained evidence, as the rule does in any other case. I cannot agree that exclusion results in no deterrence because the State's use of the evidence is "indirect." *Supra* at ¶ 23. The majority does not explain how the deterrent effect of exclusion is diminished. And indeed it is not diminished. This differs little from a case in which officers illegally search for evidence of one crime, and unlawfully seize evidence of another. I cannot conceive of why illegal behavior should be rewarded merely because more or different evidence was obtained than that sought.

¶ 37 We should take great care not to encourage violation of our constitutional guarantees. "[T]he State, by admitting evi-

current proceedings in the 1980's); *Knight*, 185 F.Supp.2d at 69 (noting that arrests were one year apart); *Beuer*, 92 Cal.Rptr.2d at 576 (discussing incidents in two separate calendar years); *Taylor*, 547 P.2d at 676 (noting later crime was committed two months after search). The only case cited by the majority that did not mention the time factor was *United States v. Turk*, but that case is completely off-point. In *Turk*, the court applied *Calandra* to hold that "evidence obtained in an illegal search may properly be admitted in the perjury trial of a victim of the search." 526 F.2d at 667.

The majority also argues that I "equate[ ] police misconduct in seizing contraband or evidence with prosecutorial decisions . . . to use the seized evidence to help prove an unrelated crime." *Supra* at n. 7. Underlying this assertion is the notion that the prosecution should be regarded separately from police, and that an "innocent" prosecutor not be penalized for unlawful police conduct. The majority cites no authority for this proposition. If it were the law, then evidence would be excluded only when the prosecutor was a participant in the illegal search. This is simply not so: Prosecution and police both are arms of the state, and evidence is routinely excluded from the state's case without evidence of prosecutorial participation in illegality. *See, e.g., State v. Meza*, 203 Ariz. 50, 59, ¶ 41, 50 P.3d 407, 416 (App.2002) ("a law enforce-

ment agency participating in a criminal investigation operates as an arm of the prosecutor in matters of discovery").

21. The evidence was not admitted in a prosecution for possession of drug paraphernalia. But that makes no difference to either application of the exclusionary rule or to the purposes served by that rule. A hypothetical illustrates this point. If police unlawfully seize forged checks written on a stolen checkbook, the evidence is not admissible merely because forgery is not the offense charged, but instead the prosecutor uses it to prove some other offense, such as theft of the checkbook (*see* A.R.S. § 13-1802 (Supp.2005)), fraud (*see* A.R.S. § 13-2310 (2001)), or participating in a criminal syndicate (*see* A.R.S. § 13-2308 (2001)). Similarly, when police illegally search for evidence of one crime, but unlawfully seize evidence of another offense, there is no exception to the rule excluding the evidence in the prosecution of the second offense. In responding to part of this hypothetical, the majority misstates my position when it suggests that I argue that "unlawfully obtained evidence is inadmissible regardless of its use in prosecutions." *Supra* at n. 8. That is not so: As I have indicated elsewhere in this opinion, evidence is admissible when a recognized exception to the exclusionary rule applies.

dence unlawfully seized, serves to encourage disobedience to the Federal Constitution which it is bound to uphold." *Mapp*, 367 U.S. at 657, 81 S.Ct. 1684. What must be considered is the risk that law enforcement, reading opinions such as this, will believe that the courts will allow illegal evidence in other cases. The majority's approach is so broad, so free from the fetters of any recognized exception to the exclusionary rule, that such a belief would not be unfounded. The impression that one can "get away with it" undermines deterrence and invites illegality.

¶ 38 It is surely unwise to adopt such a vague exception. Although the Supreme Court has adopted narrow and specific exceptions to the rule, "[t]he Court has, to be sure, not seriously questioned ... 'the continued application of the rule to suppress evidence from the [prosecution's] case where a Fourth Amendment violation has been substantial and deliberate.'" *Leon*, 468 U.S. at 908–09, 104 S.Ct. 3405. Exceptions to the rule are crafted only with great caution, as the Court explained: "[W]e must focus on systemic effects of proposed exceptions to ensure that individual liberty from arbitrary or oppressive police conduct does not succumb to the inexorable pressure to introduce all incriminating evidence, no matter how obtained, in each and every criminal case." *James*, 493 U.S. at 319–20, 110 S.Ct. 648.

¶ 39 Nor is this a case in which exclusion would inflict severe damage on the truth-seeking function of the trial. The evidence was used to prove motive or intent, but it was not essential. The intent or motive stemmed from animosity between defendant and putative victim, and that could have been established by testimony that the victim had called police to defendant's residence. Admitting the fruits of the search that followed the call is unnecessary.[22]

¶ 40 Nor can I agree with the suggestion that the exclusionary rule need not be applied because victims of illegal searches can sue for civil damages. *Supra* at n. 11. Notably, no authority is cited to support this proposition. On the other hand, the Supreme Court has clearly indicated that sanctions other than exclusion do not suffice. The exclusionary rule is able "to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *James*, 493 U.S. at 319, 110 S.Ct. 648 (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). "[E]xperience has taught that [the exclusionary rule] is the only effective deterrent to police misconduct in the criminal context, and that without it the constitutional guarantee against unreasonable searches and seizures would be a mere 'form of words.'" *Terry*, 392 U.S. at 12, 88 S.Ct. 1868 (quoting *Mapp*, 367 U.S. at 655, 81 S.Ct. 1684).

¶ 41 For these reasons, I cannot agree with the holding or reasoning of my colleagues. The exclusionary rule is after all a rule, and state judges are bound to follow it. *See Evans*, 514 U.S. at 8–9, 115 S.Ct. 1185 (state courts "are *not* free from the final authority of this Court"). Whatever disagreements we might have with the exclusionary rule, we should uphold it just as we must with all other rules grounded in federal constitutional law.

¶ 42 Accordingly, I must dissent.

---

22. Indeed, the asserted "cost" of excluding evidence is illusory. If police act lawfully, then they do not obtain evidence illegally. If they do not obtain it, obviously they do not have it for use at trial. The exclusionary rule accomplishes no more than this: It reflects the situation as it would be with law-abiding police behavior. Exclusion of illegal evidence thus imposes no added impediment to the truth-seeking function. *See* Potter Stewart, *The Road to Mapp v. Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search–and–Seizure Cases,* 83 Colum. L.Rev. 1365, 1393–94 (1983).