152 P.3d 1222

**STATE of Arizona, Appellant,**

v.

**Martin Jay LEVENS, Appellee.**

**No. 1 CA–CR 05–0969.**

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 20, 2007.

340

Andrew P. Thomas, Maricopa County Attorney By Diane Gunnels Rowley, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Daniel R. Raynak, Phoenix, Attorney for Appellee.

## OPINION

BARKER, Judge.

¶ 1 The State appeals the trial court's ruling granting a motion to suppress. For reasons that follow, we reverse the grant of the motion to suppress and remand for further proceedings consistent with this decision.

1. In ruling on the motion to suppress, the trial court stated it had reviewed the original terms and conditions of Levens' probation, but no copy of the terms and conditions of probation was ever made part of the record on appeal. We take judicial notice of the original terms and conditions of Levens' probation as contained in *State*

*Facts and Procedural History*

¶ 2 Martin Jay Levens was convicted of two counts of sexual conduct with a minor and placed on ten years' supervised probation in Maricopa County Superior Court Cause No. CR 2003–010979–001 DT. As a term and condition of his probation, Levens was required to "[s]ubmit to any program of psychological or physiological assessment ... including but not limited to ... the polygraph, to assist in treatment, planning and case monitoring."[1] Among other terms and conditions of his probation, Levens was prohibited from possessing any firearm or ammunition and required to submit to search and seizure of his property without a search warrant by the probation department. The probation terms also provided that Levens would comply with the conditions and that "a violation of any of the conditions could result in the revocation of ... probation."

¶ 3 During the pre-test of a polygraph examination ordered by his probation officer, Levens admitted having firearms in his home. The polygraph examiner informed Levens' probation officer about the statement. Based on this information, the probation officer conducted a search of Levens' home and found four firearms and ammunition. A petition was filed to revoke Levens' probation in CR 2003–010979–001 DT. In addition, Levens was indicted in the instant case on one count of misconduct involving weapons (prohibited possessor).

¶ 4 Prior to trial, Levens moved to suppress the evidence found in his home. Levens asserted that, because the purpose of polygraph testing was related to sex offender treatment, it was inappropriate for the examiner to question him regarding matters unrelated to his sexual offense and therefore improper for the probation officer to initiate a search of his home based on any statements he made in response to such questioning. The trial court rejected Levens' argument that the responses to questions posed during

*v. Levens*, CR 2003–010979–001 DT (Maricopa County Super. Ct. September 30, 2003). *See Stallings v. Spring Meadows Apartment Complex Ltd. P'ship*, 185 Ariz. 156, 160, 913 P.2d 496, 500 (1996) (taking judicial notice of order in the record of closely-related bankruptcy court proceedings).

the pre-test unrelated to sexual matters would be per se inadmissible, but expressed concern about whether any incriminating responses could legally be used against him in light of the compulsory nature of the polygraph examination.

¶ 5 At a hearing, the State attempted to introduce evidence showing that Levens was given *Miranda* warnings prior to the polygraph exam. Defense counsel objected based on lack of disclosure of the evidence. In ruling on the motion to suppress, the trial court precluded all evidence of Levens being given *Miranda* warnings prior to the polygraph exam based on defense counsel's claim of lack of disclosure. Relying on the holding in *State v. Eccles*, 179 Ariz. 226, 228–29, 877 P.2d 799, 801–02 (1994), the trial court further concluded that, absent any proof that Levens was advised of his *Miranda* rights, any statements by him in connection with the polygraph exam must be considered involuntary and could not provide a basis for a search of his home. Consequently, the trial court granted the motion to suppress the evidence found in the home.

¶ 6 After the trial court denied the State's motion for reconsideration, the State successfully moved for dismissal of the charge without prejudice and instituted this appeal. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4032(6) (2001).

### *Discussion*

¶ 7 When reviewing a ruling on a motion to suppress, we review legal issues de novo and factual findings of the court for an abuse of discretion. *State v. Booker*, 212 Ariz. 502, 504, ¶ 10, 135 P.3d 57, 59 (App. 2006).

¶ 8 The State cannot use involuntary or compelled statements against a criminal defendant. *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). The general rule is that the defendant must affirmatively assert his or her right against self-incrimination or else the law will consider the defendant to have waived the right. *Id.* at 429, 104 S.Ct. 1136. The United States Supreme Court has delineated some exceptions to the general rule, or instances when the right against self-incrimination is said to be "self-executing." *Id.* at 429–34, 104 S.Ct. 1136. For example, when an individual is in police custody, the police must first give *Miranda* warnings and the individual must knowingly and intelligently waive those rights before self-incriminating statements will be admissible. *Id.* at 429–30, 104 S.Ct. 1136.

¶ 9 In *Minnesota v. Murphy*, the Court considered the admissibility of self-incriminating statements made to a probation officer. *Id.* at 423, 104 S.Ct. 1136. Murphy, the probationer, did not assert his right against self-incrimination and made statements during the interview that were later used against him in separate criminal proceedings. *Id.* at 423–25, 104 S.Ct. 1136. The probation officer did not give Murphy *Miranda* warnings or otherwise inform him of his right against self-incrimination. *Id.* at 425, 104 S.Ct. 1136.

¶ 10 First, the Court examined whether the probation officer was required to give *Miranda* warnings to Murphy. *Id.* at 429–30, 104 S.Ct. 1136. The police must give an individual in custody *Miranda* warnings and the individual must knowingly and intelligently waive those rights in order for subsequent self-incriminating statements to be admissible in a separate criminal proceeding. *Id. Miranda* warnings are only required when an individual is in custody. *Id.; see also State v. Stanley*, 167 Ariz. 519, 523, 809 P.2d 944, 948 (1991).[2] The Court found that

2. In *Stanley*, 167 Ariz. at 523, 809 P.2d at 948, the Arizona Supreme Court determined that the defendant was not in custody and thus no *Miranda* warnings were required. The court then analyzed whether the defendant's statements were voluntary by looking at the totality of the circumstances of the confession. *Id.* at 523–24, 809 P.2d at 948–49. The court treated the *Miranda* warning inquiry and the voluntariness in-

quiry as two separate issues. In one sense, both inquiries address the issue of voluntariness. The rationale for *Miranda* warnings is that the custodial setting contains "inherently compelling pressures" which may "compel [the suspect] to speak." *Murphy*, 465 U.S. at 430, 104 S.Ct. 1136 (quoting *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Without *Miranda* warnings and a knowing and

342

the probation interview did not constitute police custody. *Murphy,* 465 U.S. at 430, 104 S.Ct. 1136. The facts that attendance was mandatory and the defendant had to give truthful answers, that the probation officer deliberately elicited incriminating evidence, that Murphy did not expect the questions about prior criminal conduct, and that no observers were present did not change the Court's decision. *Id.* at 431–33, 104 S.Ct. 1136. Therefore, the Court found that the probation officer's failure to give *Miranda* warnings did not make the incriminating statements inadmissible. *Id.* at 430, 104 S.Ct. 1136.

¶ 11 Next, the Court determined whether "the assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and ... compe[l] ... incriminating testimony.'" *Id.* at 434, 104 S.Ct. 1136 (quoting *Garner v. United States,* 424 U.S. 648, 661, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976)). The Court analyzed the situation in which the questions directed at the probationer are relevant to his probationary status and "would incriminate him in a pending or later criminal prosecution." *Id.* at 435, 104 S.Ct. 1136. The Court stated that

> if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Id.*

■ ¶ 12 The Court examined Murphy's probation conditions and determined that the state had not expressly or by implication asserted that probation would be revoked as a penalty for invocation of the privilege. *Id.* at 437, 104 S.Ct. 1136. Furthermore, there was "no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." *Id.* Because the state did not threaten Murphy

with revocation of probation if he asserted his privilege, Murphy's failure to assert the privilege was not excused and his responses were admissible against him in later criminal proceedings. *Id.* at 440, 104 S.Ct. 1136.

¶ 13 In *State v. Eccles,* the Arizona Supreme Court applied *Murphy* when it addressed the validity of a probation condition requiring the defendant to waive the right against self-incrimination. 179 Ariz. at 227, 877 P.2d at 800. Any answers the probationer gave could be used as evidence to revoke probation and in subsequent criminal proceedings. *Id.* Refusal to agree to the waiver or follow the condition of probation could result in revocation of probation. *Id.* at 228, 877 P.2d at 801. The Arizona Supreme Court held that *Murphy* prohibited the waiver condition. *Id.* After removing the unconstitutional portion of the condition, the remaining part only required the probationer to answer questions truthfully. *Id.* The court clarified that the probationer could still incriminate himself. *Id.* "[T]o avoid doing so, he must assert the privilege at the appropriate time." *Id.*

### 1. Were Miranda Warnings Required?

■ ¶ 14 The Court in *Murphy* first determined whether the probation officer was required to give *Miranda* warnings by analyzing whether the defendant was in police custody at the time. *Murphy,* 465 U.S. at 429–30, 104 S.Ct. 1136. We undertake a similar inquiry.

¶ 15 During an interview before a polygraph test, Levens admitted to having firearms in his home. Levens did not affirmatively assert the right against self-incrimination during this interview. Levens offers no evidence and does not argue that the interview took place while he was in police custody. Nor does the evidence indicate that Levens was in police custody at the time. Accordingly, the police were not required to give Levens *Miranda*

intelligent waiver, statements made by a defendant in custody are per se involuntary and hence inadmissible. *Id.* Apart from determining whether *Miranda* warnings were required and given, the court must make a separate inquiry as to whether other factors compelled the suspect to

make self-incriminating statements. *See Stanley,* 167 Ariz. at 523–24, 809 P.2d at 948–49; *Murphy,* 465 U.S. at 434–35, 104 S.Ct. 1136 (analyzing whether probation terms compelled the defendant to make self-incriminating statements).

warnings for his statements to be voluntary and admissible. *See id.* at 430, 104 S.Ct. 1136.

¶ 16 Because the police did not need to give *Miranda* warnings for the incriminating statements to be admissible, the trial court's decision to exclude evidence of *Miranda* warnings is not determinative to the admissibility of the statements. Accordingly, we need not address whether the trial court erred in excluding the evidence of Levens being given *Miranda* warnings prior to the polygraph exam based on lack of disclosure by the State.

## 2. Penalties for Assertion of the Right Against Self–Incrimination

¶ 17 We now turn to whether other factors compelled Levens' admission during the polygraph pretest interview. The original terms and conditions of probation required Levens to participate in polygraph examinations but did not require him to waive his right against self-incrimination.[3] There is no evidence that Levens' probation could have been revoked had he validly asserted the privilege against self-incrimination instead of answering. Nor is there any evidence that the State had asserted at the polygraph test that Levens' probation would or could be revoked if he invoked the privilege, or that Levens answered because he believed he faced revocation if he did not. In sum, there is no evidence that Levens was compelled to answer the incriminating question.

¶ 18 In his answering brief, Levens quotes a portion of the State's opening brief to support his argument that his probation could have been revoked as a penalty for asserting the privilege. The quoted portion of the State's brief reads:

If Levens had invoked his privilege against self-incrimination and refused to answer questions, his probation could be revoked for refusing to answer the questions, but the State would not have any incriminating statement on which the State could charge Levens for any other offense.

If there was evidence to support revocation for invoking the Fifth Amendment, such a penalty would require us to affirm under *Murphy*. However, the State cites no evidence in the record supporting the contention that Levens' probation could have been revoked for refusing to answer the question or that it threatened to do so. At one of the hearings, the trial court asked Andrew Doyle, Levens' probation officer, if there were any consequences for a probationer's refusal to answer a question. Doyle said, "I do not have the answer to that." Doyle testified that he had never been informed by a polygraph examiner that a probationer had refused to answer a question. The trial court asked Doyle again if asserting the right against self-incrimination would be a violation of Levens' probation, to which Doyle responded, "I don't believe so." The State's legal argument on appeal concerning the consequences in the *probation revocation proceeding* of having invoked the privilege during a prior polygraph examination is immaterial as to whether there were facts to support the argument that he was so threatened here.[4]

¶ 19 In sum, Levens' incriminating responses were not compelled and his failure to assert the privilege will not be excused. Thus, Levens' response to the question was voluntary and could provide a basis for a search of his home.

---

3. A condition revoking probation for failure to participate in a polygraph exam does not turn the exam into the equivalent of police custody, nor does it mean the statements made during the exam are compelled and thus inadmissible. *See Murphy*, 465 U.S. at 435, 104 S.Ct. 1136. A condition requiring participation in a polygraph exam is not the same as an unconstitutional provision revoking probation for the assertion of the right against self-incrimination. *See id.* at 434–35, 104 S.Ct. 1136 (noting the distinction between being compelled to attend and testify

and being penalized for assertion of the right against self-incrimination).

4. The documents referencing the polygraph test were excluded at the hearing on defendant's request. We have reviewed them, however, to see whether they provided a basis to contend that the State threatened defendant that refusing to answer would result in a revocation of his probation. They do not. Indeed, the consent form expressly says, over Levens' signature, that he was "not subjected to any threats."

### Conclusion

¶ 20 For the foregoing reasons, we reverse the trial court's exclusion of Levens' statements concerning his possession of weapons and the court's suppression of the evidence found in Levens' home. We remand for further proceedings consistent with this decision.

CONCURRING: G. MURRAY SNOW, Presiding Judge and DONN KESSLER, Judge.