Joseph Salvano CASTELLANO,
Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–77–213.

Court of Criminal Appeals of Oklahoma.

Oct. 11, 1978.

Lonny G. Long, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., James W. McCann, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Joseph Salvano Castellano, hereinafter referred to as defendant, was charged in the District Court, Comanche County, Case No. CRM–76–1159 and CRT–76–2597, with the offenses of Driving Under the Influence of Alcohol and Driving Without a Valid Driver's License. The cases were consolidated for trial before a jury, and defendant was convicted of both charges. Punishment was assessed at a fine of Twenty ($20.00) Dollars for Driving Without a License, and ten (10) days' imprisonment and a One Hundred ($100.00) Dollar fine for Driving Under the Influence of Alcohol. From said judgments and sentences, defendant has perfected a timely appeal to this Court.

The facts are these. Officer Kelley testified that on the evening of May 29, 1976, he was on duty at the Comanche County headquarters of the Oklahoma Highway Patrol, on East Gore Boulevard in Lawton. A male individual ran into the office and stated that he had just been robbed by three black males who were chasing him. At about this time Officer Kelley observed a car go by the station with a black male in the passenger seat. Officer Kelley observed the car to be bluish in color, but conceded that this may have been due to the mercury street lights. Kelley asked the victim what kind of vehicle the robbers were in, and the victim stated that it was a bluish or aqua colored Ford, possibly a Galaxie. Trooper Kelley then pursued the car which he had observed and effectuated a stop. The car did not travel erratically, speed, or attempt to elude Officer Kelley. Officer Kelley pulled up behind the car and got out of his vehicle, but remained behind the open door of the scout car. At this point, the officer became aware that the car he had stopped was a Buick and was dark green in color. The defendant, who was

driving the Buick, got out of the car at the officer's request and came back to speak with the officer. As the defendant walked back to Kelley, he observed that the defendant was of Spanish descent rather than of African descent. Officer Kelley further observed that there were only two persons in the car. The officer stated, however, that he had intended to hold the defendant and the passenger until the victim of the robbery could view them.

The defendant was unable to produce a driver's license at the request of the officer. As of the date of trial he had not yet done so. Officer Kelley stated he detected the odor of alcohol about the defendant and further stated that he observed the other usual indicia of intoxication. Defendant was not placed under arrest for DUI at this time, although Officer Kelley commented that he was considering the possibility.

Officer Watkins arrived on the scene shortly thereafter, and spoke briefly with Kelley. Officer Kelley told Officer Watkins that the passenger had made suspicious movements and that Watkins should check on him. Kelley did not at this time inform Watkins of his suspicions concerning the intoxicated state of the defendant, nor had Kelley as yet placed the defendant under arrest for anything. However, Watkins had the passenger step out of the car, and Watkins searched the car, finding an open container of alcohol and some marihuana. Defendant was arrested for these, cuffed, and placed in the patrol car. He was then informed that he was under arrest for driving under the influence as well. The victim of the robbery then arrived and stated that neither the defendant nor the passenger were the robbers. Defendant was then taken to the station and given a Breathalyzer test, which indicated his blood alcohol content to be 0.14%.

Trooper Watkins was not present during the trial of this matter, or for a hearing on a motion to suppress the evidence held prior to trial. Because Trooper Watkins searched the defendant's car, finding the wine and marihuana, prior to the arrest of the defendant for driving under the influence, and because the State could produce no evidence which would otherwise justify the search, e. g. plain view, the court ordered that this bottle of wine be suppressed. Apparently in another action, the marihuana was suppressed as well.

Before approaching the question of the lawfulness of defendant's arrest for driving under the influence, a determination must be made as to when the arrest of the defendant first occurred. An arrest is the taking of a person into custody, so that he may be held to answer for a public offense. Title 22 O.S.1971, § 186. An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer. Title 22 O.S.1971, § 190. 6A C.J.S. Arrest § 2, defines arrest as:

"[T]he taking, seizing, or detaining the person of another either by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, or any deprivation of the liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats, or otherwise. . . . " (Footnotes omitted).

Thus, if a suspect is interrupted and his liberty of movement is restricted by the arresting officer, then arrest is complete. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). In *Henry*, the officers received information of an undisclosed nature from the defendant's employer, which implicated the defendant with the theft of interstate shipments of whiskey. After receiving this tip and after observing defendant load some cartons in an automobile and drive away, officers, without a warrant, stopped the automobile containing the defendant and another man. Their search revealed stolen articles. The United States Supreme Court stated:

"[T]he arrest took place when the federal agents stopped the car. . . . When the officers interrupted the two men and restricted their liberty of movement, the

arrest, for purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. . . . " (Citation omitted)

See, *Moran v. United States*, 404 F.2d 663 (10th Cir. 1968); *Greene v. State*, Okl.Cr., 508 P.2d 1095 (1973).

■ In the present case, the defendant contends, and the State concedes, both correctly so, that the initial stop by Officer Kelley with the intent to effectuate a restraint upon the person of the defendant as a robbery suspect, constituted an arrest. Officer Kelley testified that when he stopped the defendant as a robbery suspect he had the intention of preventing the defendant and the other occupant in the car from leaving, and that he had the means to do so. Officer Kelley also acknowledged that he did not intend to allow the suspects to leave until they had been viewed by the complainant to determine if they were in fact the robbery suspects. Therefore, when Officer Kelley stopped the defendant with these intentions the arrest was in effect.

■ In order to clarify the fact that Officer Kelley's first stop of the defendant was indeed an arrest as opposed to an investigatory detention, a distinction must be made. The distinction between an investigatory detention and a full arrest is largely a matter of degree. Both involve significant intrusions upon the privacy of the individual, although an investigatory detention which does not result in an arrest is of a much shorter duration than an arrest. The line between an investigatory detention and an arrest can indeed be thin, and often depends upon the intention of the officer involved. If an officer is momentarily detaining a person in order to make inquiry so as to determine his identity and obtain more information, and is in no way attempting to restrain him of his liberty or take him into custody, then the stop does not constitute an arrest but, rather, is an investigatory detention. To constitute an arrest, there must be some actual restraint of the individual's freedom of movement, or

attempt to take the person into custody. *Knight v. State*, Okl.Cr., 502 P.2d 347 (1972). Thus, if an officer reasonably believes that a crime has been committed and that the person held is the one who has committed it, and the officer intends to restrain the person's liberty and to prevent his escape, then the stop constitutes a lawful arrest.

When Officer Kelley first stopped the defendant he was not merely detaining him for purposes of investigation. Officer Kelley pursued the defendant with the intention of restraining his liberty, since Kelley believed the defendant was in fact the robbery suspect. Even after Officer Kelley spoke with the defendant he intended to prevent him from leaving until the robbery victim had viewed him. The defendant, then, was not free to leave at will after a momentary detention, but was restrained of his liberty to leave. Officer Kelley stated that he would have prevented any attempt to escape and had the means to do so. The defendant was at this point under full arrest.

■ In order to decide whether Officer Kelley's arrest of the defendant and the evidence obtained incident thereto were lawful, it is necessary to determine whether at or before that time of arrest Officer Kelley had probable cause to believe a crime had been committed by the defendant. Title 22 O.S.Supp.1977, § 196, states:

"A peace officer may, without a warrant, arrest a person:

\*   \*   \*   \*   \*   \*

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

The test for a valid warrantless arrest is whether at the moment the arrest was made the officer had probable cause to make it—whether at that moment the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an

offense. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Moran v. United States*, supra; *State v. McLemore*, Okl.Cr., 561 P.2d 1367 (1977); *Greene v. State*, supra. The arresting officer's good faith is not enough to constitute probable cause; that faith must be grounded on facts which in the judgment of the court would make his faith reasonable. *Henry v. United States*, supra; *Greene v. State*, supra.

Also, the rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating, often opposing interests. Requiring more would unduly hamper law enforcement; to allow less would be to leave law-abiding citizens at the mercy of the officer's whim or caprice. *Beck v. Ohio*, supra; *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); see, *United States v. Haala*, 532 F.2d 1324 (10th Cir. 1976).

When Officer Kelley observed a car which appeared to be bluish in color go by the station with a black male in the passenger seat immediately after the robbery victim had informed him that he had been robbed by three black males who were chasing him in a bluish-colored vehicle, Officer Kelley, by the reasonable prudent man standard, had reasonably trustworthy information sufficient to warrant his believing that the defendant and his passenger were the robbery suspects. Kelley at that time had reasonable grounds upon which to stop the defendant. However, as soon as Kelley got out of his own vehicle he became aware that the car was a Buick, dark green in color rather than a Ford and blue or aqua in color. Also, as the defendant walked back to Kelley, the officer observed that he was of Spanish descent rather than of African descent. Kelley further observed that there were only two persons in the car. It is at this point that Officer Kelley no longer had probable cause to restrain the defendant's liberty. The facts and circumstances within his knowledge were not sufficient then to warrant a prudent man in believing that the defendant had committed the robbery. However, Kelley intended to still effectuate the arrest. This occurred prior to Kelley's making any inquiry of the defendant or of observing any indicia of intoxication. Thus, probable cause ended, but Kelley still effectuated the arrest, and the facts upon which the defendant was convicted were obtained after this point in time. The arrest, not being based upon probable cause at this time, became an unlawful arrest. The State relies on *Simmons v. State*, Okl.Cr., 549 P.2d 111 (1976), and its quote of *Wilson v. State*, Okl.Cr., 458 P.2d 315 (1969), to assert that an arrest by a police officer is justified if based upon probable cause, although subsequent events prove that no offense has been committed, or if committed that accused had no connection with it. See, *State v. Chronister*, Okl. Cr., 353 P.2d 493 (1960). The State also uses *Darks v. State*, Okl.Cr., 273 P.2d 880 (1954), as quoted in *Jones v. State*, Okl.Cr., 555 P.2d 63 (1976), to show that an arrest is not unlawful if the arresting officer has reasonable grounds to believe that the accused is guilty of a felony. However, after Officer Kelley learned of the facts which disproved the belief that the defendant and his passenger were the robbery suspects, he no longer had probable cause upon which to base the arrest. The arrest itself being unlawful at this point, there was no need for subsequent events to even come into play.

Where an officer, after lawfully stopping or restraining a person, becomes aware that an offense is being committed, or is about to be committed in his presence, he may lawfully arrest the offender without a warrant; but where the officer becomes aware of the facts constituting the offense after making an unlawful arrest, the arrest cannot be justified as being for an offense committed in his presence. *Hoppes v. State*, 70 Okl.Cr. 179, 105 P.2d 433 (1940). In *Hoppes*, the officer suspected that intoxicating liquor was being transported in the defendant's automobile. Upon the officers stopping the defendant, she admitted to them that she was carrying a load of liquor. The officers subsequently uncovered a quantity of whiskey on the

floor of her car, and the defendant was charged with unlawfully transporting intoxicating liquor. The court held that when the officers sounded the siren and the defendant stopped her car and submitted to the custody of the officers, the arrest was then and there consummated. Since the officers were not justified in making an arrest without a warrant for a crime not committed in their presence, and since the defendant was not committing an offense in the presence of the officers before she was arrested, the arrest was unlawful and any verbal admission made by the defendant following such arrest was incompetent and inadmissible on a motion to suppress the evidence. By the same token, since the arrest was unlawful, the search was unlawful and the mere fact that whiskey was found in the possession of the defendant would not legalize a search which was unlawful when undertaken. See, *Williams v. State*, Okl.Cr., 501 P.2d 841 (1972).

■ In the present case, Officer Kelley became aware of the fact that the defendant was intoxicated and searched the car incident thereto after making an unlawful arrest. Since the prior arrest was unlawful, the evidence obtained subsequent to it cannot justify that arrest, and therefore must be excluded. It thus follows that since the defendant was unlawfully arrested for driving under the influence of alcohol the result of the breathalyzer test was not properly admitted into evidence and must also be excluded.

For the foregoing reasons, the judgments and sentences are *REVERSED* and *REMANDED* with instructions to *DISMISS*.

CORNISH, J., concurs.

BUSSEY, P. J., dissents.