OSCN Found Document:STATE v. NELSON

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE v. NELSON
2015 OK CR 10
Case Number: S-2014-924
Decided: 09/18/2015
STATE OF OKLAHOMA, Appellant, v. NATHAN CHARLES NELSON, Appellee.
Cite as: 2015 OK CR 10, __ __

 

 

OPINION

HUDSON, JUDGE:

¶1 Appellant, the State of Oklahoma, charged Appellee Nathan Charles Nelson in Tulsa County District Court, Case No. CM-2014-1815, with Obstructing an Officer (Count 1), in violation of 21 O.S.2011, § 540; Resisting an Officer (Count 2), in violation of 21 O.S.2011, § 268; Failure to Carry Insurance/Security Verification Form (Count 3), in violation of 47 O.S.Supp.2013, § 7-606; and Failure to Signal (Count 4), in violation of 47 O.S.2011, § 11-604. Appellee filed a Motion to Quash Illegal Arrest and Detention on September 23, 2014. A hearing on Appellee's motion was held on October 1, 2014, and October 22, 2014. At the conclusion of the hearing, Special Judge Bill Hiddle granted Appellee's motion and suppressed all evidence resulting from the traffic stop. Appellant, the State of Oklahoma, now appeals, raising the following issues:

I. THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS NO REASONABLE SUSPICION TO STOP THE VEHICLE.

II. THE TRIAL COURT ERRED WHEN IT EXTENDED THE LIMITED COMMON LAW RIGHT TO RESIST AN ILLEGAL ARREST TO ALLOW MOTORISTS TO WALK AWAY FROM A TRAFFIC STOP WHEN THE ORIGINAL BASIS FOR THE STOP WAS LATER RULED TO BE INVALID.

III. SINCE THE LIMITED RIGHT TO RESIST AN ILLEGAL ARREST IS NOT A CONSTITUTIONAL RIGHT, THE TRIAL COURT ERRED BY APPLYING THE EXCLUSIONARY REMEDY TO THE RESISTING ARREST CHARGE.

IV. APPELLEE'S DECISIONS TO OBSTRUCT THE TRAFFIC STOP AND THEN RESIST ARREST FOR OBSTRUCTION ARE SEPARATE CRIMINAL ACTS THAT DO NOT CONSTITUTE FRUIT OF THE POISONOUS TREE OF THE STOP AND THEREFORE THE EXCLUSIONARY RULE DOES NOT APPLY TO THE CHARGES OF OBSTRUCTION AND RESISTING ARREST.

V. THE COURT ERRED WHEN IT PLACED THE ONUS ON THE STATE TO REMEDY THE CONSEQUENCES OF APPELLEE'S FAILURE TO FILE A MOTION THAT COMPLIED WITH OKLAHOMA LAW AFTER THE TRIAL COURT DETERMINED THAT APPELLEE'S MOTION VIOLATED 12 O.S. RULE 4.

¶2 We exercise jurisdiction pursuant to 22 O.S.2011, § 1053(5). After thorough consideration of the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we REVERSE the district court's order in part for reasons discussed below.

BACKGROUND

¶3 The October 1, 2014 hearing on Appellee's motion to quash was very brief as Special Judge Hiddle essentially terminated the hearing shortly after Officer Turnbough took the stand. The State presented one witness, Officer Tyler Turnbough. Officer Turnbough conducted the traffic stop at issue herein on March 19, 2014, in Tulsa, Oklahoma. The testimony relating to the traffic stop was as follows:

Q. [By Prosecutor Keller] Why did you pull this car over?

A. [Turnbough] We observed the driver fail to signal his intentions as he was turning left into a parking lot.

Q. Okay. And at that point what happened next?

A. We conducted a traffic stop of the vehicle. The vehicle parked. The two occupants exited the vehicle and we made contact with the driver and the passenger.

Q. Do you see the driver in the courtroom today?

A. Yes.

Q. Would you please tell the Court where he's seated and what he's wearing?

A. He's in the gallery wearing a cream-colored polo.

MR. KELLER: May the record reflect the witness has identified the defendant?

THE COURT: The record will so reflect.

Q. (BY MR. KELLER) What happened next?

THE COURT: Do you care what happened next?

MR. HENSON [Defense Counsel]: I really don't care what happened after that, Your Honor.

THE COURT: I assume after that you arrested, or may I -

MR. HENSON: Yep. By all means, Your Honor, please.

THE COURT: That you found that the driver didn't have insurance and in one way or another you cited him for obstruction and resisting. Is that right?

THE WITNESS: Correct.

THE COURT: And took him to jail?

THE WITNESS: Correct.

THE COURT: All right. Anything else?

MR. KELLER: Umm, based on that . . .

THE COURT: You got all--you got the rest of the day if you to [sic] want [to] take it, Mr. Keller. I'm not rushing you. I just--I have an inclining of where Mr. Henson is going, so . . .

¶4 Thereafter, the prosecutor essentially made only two final inquiries of Officer Turnbough before passing him as a witness. The prosecutor questioned Officer Turnbough regarding "whether or not defendant could turn into this parking lot with reasonable safety", to which the officer replied, "[y]es." The prosecutor also inquired "[w]as there any traffic on that road", to which the Officer Turnbough replied, "[o]nly his vehicle and us."

¶5 The remaining events which form the basis for Appellee's arrest and misdemeanor charges can be gleaned from Officer Turnbough's probable cause affidavit. Following the stop, Appellee along with another occupant exited the vehicle. Appellee, upon request, was unable to provide proof of valid insurance. While another officer was in the process of citing Appellee for these traffic infractions, Appellee attempted to walk away from the traffic stop. Officer Turnbough ordered Appellee to stop, but Appellee continued to walk away from the scene. Officer Turnbough then positioned himself in Appellee's direct path and ordered Appellee to return to his car. Appellee replied, "I can go wherever I want, and you can't stop me." As a result, Officer Turnbough physically restrained Appellee, having to push Appellee back toward the site of the stop. During this struggle, Appellee turned around to face Officer Turnbough. Turnbough directed Appellee to turn back around and put his hands behind his back. While Appellee initially complied, he immediately pulled away as Officer Turnbough was attempting to handcuff him. Another officer then stepped in to help facilitate the arrest. Appellee's attempt to avoid being restrained included pulling his hands away and attempting to lie on his hands.

¶6 During the brief hearing on October 1, 2014, Special Judge Hiddle made reference to a case he clearly found to be dispositive in the matter. While defense counsel apparently was aware of "the case", the State was not. The State thus requested an opportunity to review and possibly respond to this case before the trial court ruled on Appellee's motion. The trial court granted the State's request and the hearing was concluded. It is clear from the October 22, 2014 hearing transcript that Johnson v. State, 2013 OK CR 12, 308 P.3d 1053 was "the case" the trial court was referencing.

¶7 The State filed its Response to Defendant's Motion to Quash Illegal Arrest and Detention on October 21, 2014. Notable within its response the State asserted that Officer Turnbough effectuated the initial traffic stop pursuant to a Tulsa municipal ordinance. In support of this contention, the State attached to its response a copy of Officer Turnbough's police report which provided the following:

We observed the driver of the listed Chevrolet Malibu make a left hand turn without signaling. This is in violation of city ordinance T37-625-A: "For a left turn, the driver's left hand and arm shall be held horizontally outside the vehicle to indicate turning intention, or a blinker light on the front and rear of the vehicle shall indicate the direction of turning."

¶8 Appellee filed his Reply to the State's Response to the Defendant's Motion to Quash Illegal Arrest and Detention on October 22, 2014--the same day as the final hearing on this matter. Therein, citing to 12 O.S.2011, § 2803(8)(a), Appellee challenged the State's reference to and inclusion of Turnbough's police report in its response brief. Appellee further asserted the trial court was precluded from taking judicial notice of the municipal ordinance referred to in the State's response and Turnbough's police report. Referencing Goomda v. City of Okla. City, 1973 OK CR 81, ¶ 3, 506 P.2d 991, 992, Appellee averred the trial court was precluded from considering the proffered ordinance.

¶9 At the October 22nd hearing, Special Judge Hiddle sustained Appellee's motion to quash and suppressed all the evidence resulting from the illegal stop. In so ruling, Judge Hiddle stated for the record "I am stuck with the record that was presented at the hearing." While no further evidence was presented at this hearing, brief argument was had regarding (1) the alleged municipal ordinance, and (2) Appellee's unspecific motion to quash. With regard to these two issues, Special Judge Hiddle made the following comments:

I'm stuck with the evidence that was presented at the hearing, regardless. I did grant more time for the State to present law, and so on, because the defense filed a general motion.

Judge Hiddle further stated:

I will state for the record, I can't try these cases for either one of you. It is true that--what you commented upon, Mr. Keller. I passed this case so that you would have every opportunity--and it is not a trick, I just can't be telling either party how to do their case. I passed it knowing--and we discussed this last time, that it was a surprise, the Defendant's argument. Therefore, because his motion was insufficient, I gave you [the State] plenty of time in order to ask for whatever relief you wanted. . . . I am stuck with the record I have. . . . The Court was perfectly willing to allow the State to reopen its case.

Thereafter, the State requested permission to reopen the case to which the court stated, "Not now; it's too late. And I just waited, and waited, and waited a moment ago for more arguments or more requests. I can't give hints. . . . And so I'm stuck with the record; and because I am stuck with the record, the defense prevailed." Id.

¶10 Additional information relating to these proceedings will be presented as it becomes relevant to our discussion of the issues below.

DISCUSSION

¶11 Our review of the magistrate's decision is based on an abuse of discretion standard. State v. Delso, 2013 OK CR 5, ¶ 5, 298 P.3d 1192, 1194 ("In appeals brought to this Court pursuant to 22 O.S.2011, § 1053, this Court reviews the trial court's decision to determine if the trial court abused its discretion."). An abuse of discretion has been defined as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented." Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170 (quoting Stouffer v. State, 2006 OK CR 46, ¶ 60, 147 P.3d 245, 263). When reviewing a trial court's ruling, we defer to the trial court's factual findings about the stop, unless those findings are clearly erroneous. State v. Alba, 2015 OK CR 2, ¶ 4, 341 P.3d 91, 92. However, we review de novo the magistrate's legal conclusions drawn from those facts. Id.

¶12 In the first proposition of error, Appellant contends Special Judge Hiddle abused his discretion when he ruled Officer Turnbough's initial stop of Appellee was illegal. "In terms of the initial justification for a traffic stop, the Supreme Court has recognized that '[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" McGaughey v. State, 2001 OK CR 33, ¶ 25 & n.21, 37 P.3d 130, 136 & n.21 (quoting Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). Additionally, the officer's subjective motivation for actually stopping a particular vehicle is irrelevant to the legality of the stop so long as the officer had probable cause to believe a traffic violation had occurred. Id., 2001 OK CR 33, ¶ 25, 37 P.3d at 137.

¶13 The facts provided by the record in this case regarding the initial traffic stop are very limited. First, Officer Turnbough stopped Appellee's vehicle after observing Appellee fail to signal his intention to turn left into a parking lot. Second, when asked whether Appellee could "make the left turn with safety," Officer Turnbough replied "[y]es." Finally, in response to whether there was any traffic on the road, Officer Turnbough stated "[o]nly [Appellee's] vehicle and us." Based on these limited facts and relying on Johnson v. State, 2013 OK CR 12, 308 P.3d 1053, Special Judge Hiddle ruled the initial stop was illegal pursuant to 47 O.S.2011, § 11-604.

¶14 Section 11-604 provides in pertinent part:

A. No person shall turn a vehicle at an intersection, a public or private road, or a driveway, unless the vehicle is in proper position upon the roadway as required in Section 11-601 of this title, or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal as provided in subsection B of this section, in the event any other traffic may be affected by such movement. 

B. A signal of intention to turn right or left as required by law shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

(emphasis added).

¶15 As occurred in the instant case, the defendant in Johnson v. State, 2013 OK CR 12, 308 P.3d 1053, was stopped for turning left without using his turn signal. Addressing the legality of the stop, the Court set forth to analyze the purpose of § 11-604 and ascertain the Legislature's choice of the phrase "may be affected." Johnson, 2013 OK CR 12, ¶¶ 9-11, 308 P.3d at 1055-56. Finding that the purpose of 47 O.S.2011, § 11-604 is "for drivers to notify other motorists in the immediate area of their intention to make a turn or lane change, in order to prevent traffic accidents," the Court found the phrase means "a driver must engage a turn signal 'when there is a reasonable possibility that other traffic may be affected.'" Johnson, 2013 OK CR 12, ¶ 11, 308 P.3d at 1055-56 (quoting United States v. Burciaga, 687 F.3d 1229, 1233 (10th Cir. 2012) which quotes State v. Hubble, 146 N.M. 70, 206 P.3d 579, 584 (2009)). Hence, proof of any actual effect on other traffic is not necessary to prove a violation of § 11-604; a reasonable possibility that other traffic may have been affected is sufficient. Johnson, 2013 OK CR 12, ¶ 12, 308 P.3d at 1056. The record evidence in Johnson established other cars were on the road at the time Johnson failed to signal. Thus, the Court found this evidence was sufficient to prove a § 11-604 violation which provided probable cause to legally stop Johnson. Id.

¶16 Applying Johnson to the record evidence presented in the instant case, Special Judge Hiddle found the initial stop was illegal.[1] However, referring this Court to United States v. Burkley, 513 F.3d 1183 (10th Cir. 2008), the State contends this ruling was in error and asserts the mere fact that Officer Turnbough's police car was on the roadway and may have been affected by Appellee's failure to signal was sufficient to prove a § 11-604 violation. As was done by this Court in Johnson, supra., the Burkley Court examined § 11-604 and rejected the defendant's contention that the State was required to prove that traffic was actually affected by the defendant's unsignaled turn. In doing so, the Court further concluded that under the facts presented a police car can be the actual vehicle (or traffic) that may have been affected. Id. at 1187 n.1.

¶17 As previously set forth, the record surrounding the initial stop in the present case is less than ideal. As demonstrated by Burkley, the mere fact that Officer Turnbough's police car and Appellee's vehicle were the only two vehicles on the roadway at the time of the alleged traffic infraction does not dictate a finding that the initial stop was illegal. However, the record does not provide any indication of where Officer Turnbough's vehicle was in relation to Appellee's vehicle to determine if Appellee's failure to signal may have affected other traffic for purposes of § 11-604. Moreover, Officer Turnbough testified Appellee could make the left turn safely into the parking lot.

¶18 Subsequent to the trial court's ruling in this matter, the United States Supreme Court handed down Heien v. North Carolina, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (decided Dec. 15, 2014). In Heien, an officer stopped a vehicle because one of its two brake lights was out, when in actuality the law only required one working brake light. Addressing "whether such a mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment", the Supreme Court ruled that it can. Heien, 35 S. Ct. at 534. At first blush, the Heien case appears applicable to the issue at hand; however, further analysis demonstrates otherwise. In contrast to Heien, this is not a case involving a mistake of law or fact by the officer involved, but a case involving mistakes by the prosecutor. Nothing in the record indicates Officer Turnbough stopped Appellee based upon a mistake or misunderstanding of the law or the facts. Rather, the State simply failed to present sufficient facts at the motion hearing to demonstrate the stop was reasonable pursuant to 47 O.S.2011, § 11-604. Nor did the State seek to properly introduce into the record the relevant municipal ordinance, which would have enabled the State to argue in the alternative that the stop was reasonable based on this ordinance. While the trial court's unconventional handling of the matter clearly set the stage for the confusion that ensued at the hearing on Appellee's Motion to Quash Illegal Arrest and Detention, the State was given a sufficient opportunity to reexamine and shore up its case as needed and failed to do so.

¶19 Thus, based upon the limited facts presented in this matter, we cannot conclude the trial court abused its discretion when it ruled the initial stop was illegal. Appellant's first proposition of error fails.

¶20 A finding that the initial stop in this matter was improper, however, is not dispositive of whether Judge Hiddle properly suppressed "all evidence resulting from the illegal stop." Evidence that is acquired because of prior illegal activity is generally excluded as the fruit of that illegality. Wong Sun v. United States, 371 U.S. 471, 484-85, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963). Yet, in keeping with Brown v. Illinois, 422 U.S. 590, 603, 95 S. Ct. 2254, 2261, 45 L. Ed. 2d 416 (1975), this Court has rejected "a 'but for' test which would require automatic exclusion of evidence that would not have come to light but for the illegal actions of police." Jacobs v. State, 2006 OK CR 4, ¶ 6, 128 P.3d 1085, 1087. We will thus address the State's remaining allegations of error but do so in the logical order in which the issues present themselves based upon the chain of events which transpired following the initial stop.

¶21 We turn next to the State's fourth proposition of error relating to Appellee's obstructive behavior following the stop which ultimately led to his arrest for obstruction and resisting arrest. The State in essence contends in this proposition of error that the magistrate abused his discretion when he suppressed the evidence relating to Appellee's obstruction and resisting arrest charges as fruit of the illegal stop. At the October 22, 2014 hearing, the State requested a specific ruling on its contention that "we can only suppress the actual fruits of the detention, which is the failure to signal and the no insurance, and not the separate criminal activities of the Defendant, which is the obstruction and the resisting." Judge Hiddle ruled:

But you can resist an illegal detention or arrest, and I've ruled the detention and arrest to be illegal, so that's--the law answers that question. That's not even--I don't even have to strain my brain for that one.

¶22 While "[t]he poisonous tree doctrine allows a defendant to exclude evidence 'come at by exploitation' of violations of his Fourth Amendment rights", United States v. Jarvi, 537 F.3d 1256, 1259 (10th Cir. 2008), the State avers Appellee's decision to obstruct the traffic stop was a separate criminal act that purged any possible illegal taint associated with the initial traffic stop. See Flores v. State, 1999 OK CR 52, ¶ 11, 994 P.2d 782, 784 ("[T]he original taint of impropriety may be removed by intervening circumstances.")

To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights. The defendant then bears the burden of demonstrating "a factual nexus between the illegality and the challenged evidence." Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.

United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000) (citation omitted).

¶23 A traffic stop is clearly a seizure under the Fourth Amendment. Seabolt v. State, 2006 OK CR 50, ¶ 6, 152 P.3d 235, 237. Thus, the next query is whether a factual nexus exists between the illegal stop and Appellee's obstructive behavior. "To establish the factual nexus, at a minimum, 'a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct.'" United States v. Chavira, 467 F.3d 1286, 1291 (10th Cir. 2006) (quoting Nava-Ramirez, 210 F.3d at 1131). The threshold question is whether the challenged evidence was a product of an "exploitation of the original illegality." Flores, 1999 OK CR 52, ¶ 11, 994 P.2d at 784-85. In the present case, the question thus being whether Appellee's behavior in walking away from the stop was a direct product of the illegal stop or whether Appellee's conduct was an intervening circumstance or act, which dissipated or purged any taint originating from the illegal stop. To make this determination, "a reviewing court must consider (a) the proximity in time between the illegal seizure and the discovery of the evidence; (b) any intervening circumstances; and (c) the purpose and flagrancy of official misconduct." Jacobs, 2006 OK CR 4, ¶ 6, 128 P.3d at 1087.

¶24 In the present case, the lapse of time between the initial stop and Appellee's obstructive conduct was minimal. However, despite the brief lapse of time, Officer Turnbough did not "discover" the challenged evidence, rather Appellee's behavior actually created the now challenged evidence. This distinction leads us to the second factor--the presence of an intervening circumstance. We cannot find that Appellee's alleged obstructive behavior to be the product of Officer Turnbough's illegal stop. Despite the questionable stop, the record does not indicate that the officers involved had any intention other than to simply write Appellee a ticket for failing to signal and carry proof of insurance and then send Appellee on his way. Appellee's decision to behave as he did was an independent and voluntary act which broke the link to any taint caused by the illegal stop. See United States v. Boone, 62 F.3d 323, 326 (10th Cir. 1995) (the defendant's decision to discard evidence was an independent and voluntary act sufficient to cut the link to the unlawful car search).

¶25 As to the third and final factor, the purpose and flagrancy of the official misconduct, this factor "may be shown by evidence that police actions were purposefully investigatory in nature; that an arrest was obviously illegal; and that an arresting officer was aware the arrest was illegal." Jacobs, 2006 OK CR 4, ¶ 6, 128 P.3d at 1087. The initial traffic stop in the instant case was not per se illegal. Nor does the record show that Officer Turnbough was aware the stop was illegal.[2] The traffic stop, although it was ultimately found to be illegal, simply does not qualify as a flagrant Fourth Amendment violation that tilts the scales against attenuation. Boone, 62 F.3d at 325. Appellee's conduct was an intervening circumstance, or act, which purged any taint originating from the initial stop. Thus, we find the State's fourth proposition of error has merit. While the evidence relating to Appellee's failure to carry insurance was properly suppressed, Special Judge Hiddle erred when he suppressed all evidence relating to Appellee's obstruction and resisting arrest charges.

¶26 This determination essentially answers the State's third proposition of error. The State contends therein that the trial court erred when it applied the exclusionary remedy to Appellee's resisting arrest charge. As just discussed, Appellee's obstructive behavior was an independent act, which broke the link to any taint originating from the unlawful stop. Hence, evidence of Appellee's obstructive behavior was not a fruit of the questionable stop. Moreover, this behavior formed the legal basis for Appellee's arrest for obstruction. See Trent v. State, 1989 OK CR 36, ¶ 4, 777 P.2d 401, 402 ("Physical force is but one way of obstructing an officer. . . . [W]ords alone may suffice to support a conviction for Obstructing an Officer."). The exclusionary remedy is therefore not applicable to Appellee's resisting arrest charge. Evidence of Appellee's resisting arrest charge was suppressed in error.

¶27 Despite the foregoing determinations, the Court is cognizant that Appellee's alleged obstructive behavior not only formed the legal basis for Appellee's obstruction charge, but arguably could be viewed as an act of resistance to the seizure that occurred when Appellee was stopped. Thus, we turn next to the State's second proposition of error in which the State asserts the magistrate erred when he extended the limited common law right to resist an illegal arrest to permit Appellee to walk away from the traffic stop. The analysis of this issue requires this Court to focus on (1) the Fourth Amendment seizure which occurred when Appellee was stopped, and (2) whether Appellee had a right under Oklahoma law to resist such seizure.

¶28 As a general rule, one may reasonably resist an unlawful arrest. Sandersfield v. State, 1977 OK CR 242, ¶ 11, 568 P.2d 313, 315. The right to resist an illegal arrest is a common law right providing that "[i]f the officer had no right to arrest, the other party might resist the illegal attempt to arrest him, using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest."[3] Bad Elk v. United States, 177 U.S. 529, 535, 20 S. Ct. 729, 731, 44 L. Ed. 874 (1900). The right to resist an unlawful arrest is thus limited and varies with the circumstances. Sandersfield, 1977 OK CR 242, ¶ 11, 568 P.2d at 315. See also Hayes v. State, 1977 OK CR 220, ¶ 3, 566 P.2d 1174, 1175 ("In Oklahoma, under some circumstances, a person may reasonably resist an unlawful arrest."). While a person in Oklahoma may reasonably resist an unlawful arrest, the circumstances in the instant case involve an unlawful traffic stop--not an arrest. Whether this common law right extends to an unlawful traffic stop is a unique issue which this Court has not previously addressed.

¶29 As noted in Graves v. Thomas, 450 F.3d 1215, 1223 (10th Cir. 2006), "a routine traffic stop is not equivalent to an arrest." An "[a]rrest is the taking of a person into custody, so that he may be held to answer for a public offense." 22 O.S.2011, § 186. "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer." 22 O.S.2011, § 196. "A [traffic] stop, while an intrusion on liberty, is slight compared to the deprivation of freedom that results from an arrest." Barnhard v. State, 86 Md.App. 518, 528, 587 A.2d 561, 566 (1991), aff'd, 325 Md. 602, 602 A.2d 701 (1992). As compared to an arrest, a traffic stop entails a lesser intrusion on one's personal liberty than an arrest and is a relatively brief encounter with police officers. Thus, while "[a] traffic stop is a seizure within the meaning of the Fourth Amendment, . . . a routine traffic stop is more analogous to an investigative detention than a custodial arrest." Graves, 450 F.3d at 1223-24 (quoting United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005)). See also Castellano v. State, 1978 OK CR 107, ¶ 8, 585 P.2d 361, 365 ("If an officer is momentarily detaining a person in order to make an inquiry so as to determine his identity and obtain more information, and is in no way attempting to restrain him of his liberty or take him into custody, then the stop does not constitute an arrest, but, rather, is an investigatory detention.").

¶30 The majority of states which have considered the issue of whether the right to resist extends or applies to investigatory stops or detentions have either statutorily or judicially rejected such an extension. Graves, 450 F.3d at 1225 n.7 (referencing Faulkner v. State, 277 Ga.App. 702, 627 S.E.2d 423, 425 (Ga. Ct. App. 2006) ("We do not leave the determination of whether there is a legal basis for a traffic stop to the driver. To hold otherwise could encourage persons to resist the police and create potentially violent and dangerous confrontations.") (internal quotations and citations omitted); State v. Windus, 207 Ariz. 328, 86 P.3d 384, 387 n. 3 (Ariz. Ct. App. 2004); State v. Sims, 851 So.2d 1039, 1047 (La. 2003); State v. Howell, 782 N.E.2d 1066, 1067-68 (Ind. Ct. App. 2003); Com v. Hill, 264 Va. 541, 570 S.E.2d 805, 808 (Va. 2002); State v. Coleman, 10 Neb.App. 337, 630 N.W.2d 686, 697 (Neb. Ct. App. 2001); Abrams v. Walker, 165 F. SupP.2d 762, 767 (N.D.Ill. 2001); State v. Wiegmann, 350 Md. 585, 714 A.2d 841 (Md. 1998); State v. Dawdy, 533 N.W.2d 551, 555-56 (Iowa 1995) (adopting the Eighth Circuit's holding in United States v. Dawdy, 46 F.3d 1427 (8th Cir.1995))). Moreover, in California v. Hodari D., 499 U.S. 621, 627, 111 S. Ct. 1547, 1551, 113 L. Ed. 2d 690 (1991), the Supreme Court cautioned:

We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words and beyond the meaning of arrest, as respondent urges. . . . Compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply.

¶31 We likewise decline to extend the right to resist to an illegal traffic stop. Compared to an arrest, a routine traffic stop is a short-lived encounter with law enforcement that entails far less of an intrusion on a driver's personal liberty. Additionally, the typical motorist simply is not equipped to make a determination of whether there is a legal basis for a traffic stop. Whether the officer did, in hindsight, have probable cause to make the traffic stop should be resolved in a courtroom, not in the streets. To permit otherwise would effectively encourage drivers to engage in potentially explosive self-help methods. This, in turn, would increase the risk of escalating what should be a relatively benign interaction between law enforcement and a driver into a potentially dangerous or violent interaction. See Rodgers v. State, 280 Md. 406, 419-20, 373 A.2d 944, 951-52 (1977) (We cannot "ignore the fact that combat on the streets between police officers and a citizen resisting arrest can and often does involve passersby or other citizens, some of whom may be inclined to enter the fray, to their detriment--others of whom may suffer injury merely by being in the way."). As we have seen played out in the news time and time again, resisting an arrest often results in injuries to police officers, suspects, and passersby that are much graver than the arrest itself. Barnhard, 86 Md.App. at 527, 587 A.2d at 566. As observed by the Supreme Court of California, in People v. Curtis, 70 Cal.2d 347, 74 Cal.Rptr. 713, 716, 450 P.2d 33, 36 (1969):

[S]elf-help as a practical remedy is anachronistic, whatever may have been its original justification or efficacy in an era when the common law doctrine permitting resistance evolved. . . . Indeed, self-help not infrequently causes far graver consequences for both the officer and the suspect than does the unlawful arrest itself. Accordingly, the state, in deleting the right to resist, has not actually altered or diminished the remedies available against the illegality of an arrest without probable cause; it has merely required a person to submit peacefully to the inevitable and to pursue his available remedies through the orderly judicial process.

¶32 Resistance to a traffic stop is undoubtedly the "least effective and least desirable of all possible remedies [to an illegal traffic stop]." Rodgers, 280 Md. at 421, 373 A.2d at 952. To recognize or extend the right to resist such momentary seizures, short of an arrest, would serve only to expand the danger of violence. Barnhard, 86 Md.App. at 528, 587 A.2d at 566. Thus, we decline to recognize a right to resist an unlawful traffic stop in Oklahoma. Balancing the State's interest in discouraging violence against the brief seizure typical to a traffic stop, this ruling does not result in a deprivation of liberty. See Rodgers, 280 Md. at 421, 373 A.2d at 952 (Court's rejection of physical resistance "when balanced against the State's interest in discouraging violence, cannot be realistically considered a deprivation of liberty.").

¶33 In so ruling, we find the State's second proposition of error has merit. Assuming arguendo that Appellee perceived the initial stop to be unlawful, Appellee did not have the right to resist the stop. Whether a stop is lawful is an issue to be resolved peacefully in a courtroom, not by a driver while pulled over on the side of the road, or as occurred in this matter in a parking lot. Although Officer Turnbough lacked probable cause to stop Appellee under the facts contained within this record, Appellee did not have a right under Oklahoma law to resist that stop.

¶34 The State complains in its final assignment of error that the trial court erred when it placed the onus on the State to decipher Appellee's overly vague motion to quash. At the October 1, 2014 hearing on Appellee's motion, the trial court determined Appellee's motion violated the specificity requirements of Rule 4 of the Rules for the District Courts of Oklahoma, 12 O.S.2011, Ch 2, App. (2014). As a result, Special Judge Hiddle continued the hearing to October 22, 2014, to provide the State time to seek relief or request permission to reopen its case.[4] This continuance provided the State with sufficient time to determine how best to address Appellee's brief, including seeking to reopen the case to present additional evidence and properly introduce the relevant municipal ordinance the State contended in its reply brief was actually the legal basis of the challenged stop. Despite the somewhat unconventional manner in which the trial court handled this entire matter, the State has failed to demonstrate the trial court's overall treatment of Appellee's insufficient motion was an abuse of discretion. See Neloms, 2012 OK CR 7, ¶ 35, 274 P.3d at 170 ("An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue."). Thus, the State's final proposition of error fails.

DECISION

¶35 The October 22, 2014 ruling of the trial court sustaining Appellee's motion to quash and suppressing the evidence in this case is REVERSED and this case is REMANDED to the trial court for further proceedings not inconsistent with this opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2015), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE BILL HIDDLE, SPECIAL JUDGE

APPEARANCES AT HEARING                                 APPEARANCES ON APPEAL

 

 
 
 
 
 
 KEVIN KELLER
 ASSISTANT DISTRICT ATTORNEY
 500 S. DENVER AVE., STE. 900
 TULSA, OK 74103
 ATTORNEY FOR STATE
 
 
 
 
 KEVIN KELLER
 ASSISTANT DISTRICT ATTORNEY
 500 S. DENVER AVE., STE. 900
 TULSA, OK 74103
 ATTORNEY FOR APPELLANT
 
 
  
 
 
 
 
 
 
 ROB V. HENSON
 HENSON LAW FIRM, PLLC
 406 S. BOULDER
 TULSA, OK 74103
 ATTORNEY FOR DEFENDANT
 
 
 
 
 ROB V. HENSON
 HENSON LAW FIRM, PLLC
 406 S. BOULDER
 TULSA, OK 74103
 ATTORNEY FOR APPELLEE
 
 
  
 
 
 

 

OPINION BY: HUDSON, J.
SMITH, P.J.: CONCUR IN RESULTS
LUMPKIN, V.P.J.: CONCUR IN RESULTS
JOHNSON, J.: CONCUR
LEWIS, J.: CONCUR 

FOOTNOTES

[1] Special Judge Hiddle's analysis was based on Officer Turnbough effectuating the stop pursuant to 47 O.S.2011, § 11-604. The State argued in its Response to Defendant's Motion to Quash Illegal Arrest and Detention that Officer Turnbough actually stopped Appellee pursuant to a Tulsa municipal ordinance which apparently requires motorists to always signal the direction they intend to turn. However, the State failed to properly introduce the relevant ordinance into the record. See Hishaw v. City of Oklahoma City, 1991 OK CR 122, ¶ 3, 822 P.2d 1139, 1139-40 (outlining appropriate methods by which to properly bring an ordinance to the attention of a court). The trial court was also precluded from taking judicial notice of this ordinance. See Hayes v. State, 1977 OK CR 220, ¶ 5, 566 P.2d 1174, 1175 (a district court may not take judicial notice of a municipal ordinance). Therefore, Judge Hiddle was precluded from considering the ordinance when determining whether Officer Turnbough had probable cause to believe a traffic violation had occurred.

[2] Special Judge Hiddle acknowledged that not many officers are aware of the Johnson case, stating "Officers don't know. . . . And most lawyers don't know this case. But I will talk about it in a minute." While Judge Hiddle's comment implies a mistake of law, as discussed in footnote 2 above, that is not what occurred in this matter. See Heien, 35 S. Ct. 530. Officer Turnbough appears to have understood the law. In all likelihood the stop was lawful, but sadly the record is simply not sufficient to support such a finding. To this end we reiterate that although Officer Turnbough may have actually stopped Appellee pursuant to a Tulsa municipal ordinance, just as the district court was precluded from taking judicial notice of such ordinance, so too is this Court. See Hayes, 1977 OK CR 220, ¶ 3, 566 P.2d at 1175 (neither this Court nor a District Court may take judicial notice of a municipal ordinance); Hishaw, 1991 OK CR 122, ¶ 4, 822 P.2d at 1140 ("the ordinance under challenge was not included in the record on appeal and therefore is not properly before this Court for review.").

[3] The origins of the right to resist an unlawful arrest can be traced to the Magna Carta in 1215. Hemmens & Levin, "Not a Law at All": A Call for a Return to the Common Law Right to Resist Unlawful Arrest, 29 Sw. U. L. R. 1, 9 (1999). The right was judicially established in 1666 in the Hopkin Huggett's Case, 84 Eng. Rep. 1082 (K.B. 1666). The court reasoned that an illegal arrest "created adequate provocation for the victim, thus justifying the victim's resistance." Id. (citing Hopkin Huggett's Case, 84 Eng. Rep. 1082 (K.B. 1666)).

[4] In issuing his ruling, Special Judge Hiddle stated at the October 22, 2014 hearing, "I passed it knowing - and we discussed this last time, that it was a surprise, the Defendant's argument. Therefore, because his motion was insufficient, I gave you [the State] plenty of time in order to ask for whatever relief you wanted. . . . The Court was perfectly willing to allow the State to reopen its case. . . . I just waited, and waited, and waited a moment ago for more arguments or more requests. I can't give hints."

 

 

LUMPKIN, VICE PRESIDING JUDGE: CONCUR IN RESULTS:

¶1 I concur in reversing the order of the District Court sustaining the motion to quash and suppress the evidence. I also agree with remanding the case to the District Court for further proceedings. I write separately though to address several points.

¶2 I disagree with the opinion's reliance on the common law. Oklahoma is not a common law state. Our laws have been codified by the Legislature in the form of state statutes and these statutes supplant the common law except where the Legislature has failed to speak. Title 12 O.S.2011, § 2 provides: "[t]he common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object." See also Ex part Reniff, 65 Okla. Crim. 400, 88 P.2d 382, 383 (1939) (12 O.S. § 2 applies to both civil and criminal cases). Title 22 O.S.2011, § 9 provides: "[t]he procedure, practice and pleadings in the courts of record of this state, in criminal actions or in matters of criminal nature, not specifically provided for in this code, shall be in accordance with the procedure, practice and pleadings of the common law." See also Elliott v. Mills, 1959 OK CR 22, ¶ 27, 335 P.2d 1104, 1111 ("[t]he Constitution of Oklahoma is silent upon any adoption or abrogation of the common law. However the legislature announced by statute the force and effect of the common law in Oklahoma" citing 12 O.S. § 2); State v. Sandfer, 93 Okla. Crim. 228, 226 P.2d 438, 442 (1951) (there are no common law crimes in Oklahoma); Bingham v. State, 82 Okla. Crim. 305, 169 P.2d 311, 315 (1946) ("[w]e only look to the common law in Oklahoma where procedure in matters of criminal nature are not provided for in the code", citing 22 O.S. § 9)(emphasis added); Barclay v. U.S., 11 Okla. Crim. 503, 69 P. 798, 800 (1902) ("[t]he federal courts hold that there are no common-law crimes under the laws of the United States; that all crimes, the punishment and the procedure are statutory, the whole criminal jurisdiction of the courts of the United States being derived from acts of congress".) The principle that statutes prevail over the common law is also seen throughout our law. See Gilbert v. State, 1982 OK CR 100, ¶ 21, 648 P.2d 1226, 1231 (statutes defining contempt supplanted common law definition of contempt); Campbell v. State, 1972 OK CR 195, ¶ 4, 500 P.2d 303 (common law writ of coram nobis supplanted by statutory Post-Conviction Procedure Act); 60 O.S.2011, § 175.50 (regarding the application of statutes over common law in property issues). The issues in the present case may be resolved by reliance on our state statutes, and not the common law or cases from other jurisdictions, with statutes different from Oklahoma.

¶3 This opinion cites to a line of cases which state that a person has the right to resist an unlawful arrest. This principle has not been codified in our statutes. The validity of this principle has been limited, if not supplanted, by our state statutes. The Legislature has enacted statutes prohibiting resisting an arrest and obstructing an officer. See 21 O.S.2011, §§ 268 and 540. In 22 O.S.2011, § 196, the Legislature has defined what is a legal, warrantless arrest. In § 196(1) an officer may legally arrest, without a warrant, for a public offense, committed or attempted, in the officer's presence. The Legislature has also provided that if a person, after being notified that he is to be arrested, flees or forcibly resists, the officer may use all necessary means to effect the arrest. 22 O.S.2011, § 193. Additionally, in 22 O.S.2011, §§ 31-33, the Legislature has set forth who may resist the commission of a public offense. The Legislature has not provided any exceptions to these rules which would incorporate a right to resist arrest. These statutes have essentially changed the common law of arrest and any right there may have been to resist arrest. The Legislature has implicitly if not explicitly, supplanted the common law of arrest with these state statutes.

¶4 The opinion distinguishes Heien v. North Carolina, ___ U.S. ___, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014), from the present case. However, I would urge the trial court on remand to review Heien as it appears, though it is by no means clear, that the initial traffic stop was ruled illegal based solely upon the court's reading of Johnson v. State, 2013 OK CR 12, 308 P.3d 1053 and the officer's alleged misunderstanding of the law. In Heien, the Supreme Court held that a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake or mistake of law by the officer. Therefore, if the officer's actual understanding of the law was correct or if the officer had a legitimate belief that the statute or ordinance had been violated, then under Heien, the stop and arrest would be legal. Regardless, I find no evidence of officer misconduct and without officer misconduct there can be no application of the Exclusionary Rule as the rule is only in place to address police misconduct. Hill v. State, 1988 OK CR 251, ¶ 10, 764 P.2d 210, 213 ("[t]he purpose of the exclusionary rule is to deter police misconduct and to provide an effective remedy for unreasonable searches and seizures in violation of the fourth amendment of the United States Constitution and Article II, § 30, of the Oklahoma Constitution").

¶5 In the present case, the judge took a proactive role in this hearing, apparently based on matters not a part of this record. While the prosecutor should have taken the opportunity to reopen the case, offer the municipal ordinance for admission into evidence and make a full record, the actions of the judge had already chilled the proceedings and contributed to the limited and confusing record in his case. While it is understandable under the record before us that the prosecutor did not take advantage of the opportunity to reopen his case, it is nonetheless the lawyer's responsibility to make the record and provide it to this Court on appeal.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 251, 764 P.2d 210, HILL v. STATE
Discussed
 1989 OK CR 36, 777 P.2d 401, TRENT v. STATE
Discussed
 1991 OK CR 122, 822 P.2d 1139, HISHAW v. CITY OF OKLAHOMA CITY
Discussed at Length
 1977 OK CR 220, 566 P.2d 1174, HAYES v. STATE
Discussed at Length
 1977 OK CR 242, 568 P.2d 313, SANDERSFIELD v. STATE
Discussed at Length
 1978 OK CR 107, 585 P.2d 361, CASTELLANO v. STATE
Discussed
 2001 OK CR 33, 37 P.3d 130, 72 OBJ 3431, MCGAUGHEY v. STATE
Discussed at Length
 2006 OK CR 4, 128 P.3d 1085, JACOBS v. STATE
Discussed at Length
 2006 OK CR 46, 147 P.3d 245, STOUFFER v. STATE
Discussed
 2006 OK CR 50, 152 P.3d 235, SEABOLT v. STATE
Discussed
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed at Length
 2013 OK CR 5, 298 P.3d 1192, STATE v. DELSO
Discussed
 2013 OK CR 12, 308 P.3d 1053, JOHNSON v. STATE
Discussed at Length
 2015 OK CR 2, 341 P.3d 91, STATE v. ALBA
Discussed
 1999 OK CR 52, 994 P.2d 782, Flores v. State
Discussed at Length
 1959 OK CR 22, 335 P.2d 1104, ELLIOTT v. MILLS
Discussed
 1939 OK CR 16, 88 P.2d 382, 65 Okl.Cr. 400, Ex parte Reniff
Cited
 1946 OK CR 54, 169 P.2d 311, 82 Okl.Cr. 305, Bingham v State
Cited
 1951 OK CR 4, 226 P.2d 438, 93 Okl.Cr. 228, STATE v. SANDFER
Discussed
 1982 OK CR 100, 648 P.2d 1226, GILBERT v. STATE
Discussed
 1972 OK CR 195, 500 P.2d 303, CAMPBELL v. STATE
Discussed
 1973 OK CR 81, 506 P.2d 991, GOOMDA v. CITY OF OKLAHOMA CITY
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1902 OK 19, 69 P. 798, 11 Okla. 503, BARCLAY v. UNITED STATES
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2, Common Law to Remain in Force in Aid of General Statutes
Discussed at Length
 12 O.S. 2803, Hearsay Exceptions - Availability of Declarant Immaterial
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 268, Resistance to Executive Officer's Performance of Duty
Discussed
 21 O.S. 540, Obstruction of Public Officer - Recording the Activity of an Officer in a Public Area
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 9, Common Law
Discussed
 22 O.S. 186, Definition of Arrest
Cited
 22 O.S. 193, Officer's Authority When Defendant Resists Arrest
Cited
 22 O.S. 196, Arrest Without Warrant by Officer
Discussed
 22 O.S. 1053, State or Municipality May Appeal in What Cases
Discussed
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 7-606, Failure to Maintain Insurance or Security - Failure to Provide Proof of Insurance or Security - Penalties
Cited
 47 O.S. 11-604, Turning Movements and Required Signals
Discussed at Length
Title 60. Property
 Cite
Name
Level

 60 O.S. 175.50, Repeal - Operation and Effect
Cited